Decided 31 July, 1899.

## DE BOEST *v.* GAMBELL.

[58 Pac. 72.]

SALARY OF PUBLIC OFFICERS—EXECUTED AGREEMENT.— An agreement by a public officer to accept less than the amount fixed bylaw as his salary is void on grounds of public policy, and cannot be enforced. Nor is an acceptance of less than the full salary without any previous agreement so to do a bar to a recovery of the balance. But an acceptance of less than the amount due in pursuance of an agreement to that effect is binding, and no recovery can be had for the unpaid balance.

From Multnomah : ARTHUR L. FRAZER, Judge.

This is a mandamus proceeding by Tinnies De Boest against the Mayor of Portland and A. N. Gambell, the city Auditor, to compel them to issue warrants in favor of the plaintiff, formerly an assistant and also chief engineer in the fire department, for the difference between the salaries of the respective offices as fixed by the charter, and what he agreed and stipulated to receive and was actually paid. Briefly, the alternative writ alleges that the charter of the City of Portland, passed at the legislative session of 1893 (Laws, 1893, p. 857), provides for a Board of Fire Commissioners, consisting of three members, with full control of the fire department, and power to regulate its expenditures ; the officers of such department to consist of a chief and assistant engineer, etc. ; the salary of the former to be $2,400, and the latter $1,800, per annum, to be paid by warrants drawn upon the treasurer of the city, upon requisition made by the President of the Board of Fire Commissioners ; that the plaintiff was duly appointed assistant chief of the fire department, and performed the duties of such office from July 1 to September 30, 1896, and there was paid to him on account thereof the sum of $200, leaving a balance due him of $100 ; that from the first day of October, 1896, up to and including the thirtieth day of June, 1898,

he was the duly appointed and acting chief of the fire department, and during such time received on account of his salary the sum of $2,835, leaving a balance due him of $1,365 ; that on the thirtieth of June, 1898, the President of the Board of Fire Commissioners made. a requisition for such balances, but that the defendants refused, and still refuse, to draw the proper warrants therefor.

The answer refers to various sections of the charter creating and regulating the fire department, the pay of the officers thereof, and the method of procedure, from which it appears, among other things, that the Board of Fire Commissioners is required on the first of January of each year, or.as soon thereafter as practicable, to report to the common council of the city the estimated amount of salaries and other necessary expenses of the department for the ensuing year, and the council is required, if it deem it practicable, at the same time other taxes are levied and collected, to levy and collect a special tax sufficient to raise the amount so estimated by the Board of Fire Commissioners, which shall be known as the "Fire Department Fund," and shall be subject solely to the control of the Board of Fire Commissioners, and paid out only upon warrants drawn by the mayor and auditor upon requisitions therefor made by its president, for claims duly allowed by the board. And it then alleges, in substance, that prior to January 1, 1896, the expenses of running the city being greater than the amount of money which could be raised by taxation under the limitations imposed by the charter, the common council notified the fire commissioners that it was necessary to retrench or cut down expenses, in compliance with which such commissioners passed resolutions reducing salaries (among others, those of the chief and assistant engineers

35 OR.—24.

from $200 and $150 per month, respectively, as fixed by the charter, to $135 and $100 per month); that the estimates for the maintenance of the department during the years 1896, 1897, and 1898, as well as the rate of taxation for such purposes, were based upon the salaries as so reduced, and the special fund so raised for that purpose had been expended during each year, and completely exhausted, before the commencement of this proceeding, except a small balance remaining for the year 1898, but which was not sufficient to satisfy the requisition mentioned in the alternative writ.

The answer further alleges that on July 30, 1896, and after such reduction of salaries had been made, the plaintiff was appointed assistant chief of the fire department, and agreed with the board to discharge the duties of such office for the sum of $100 per month, as provided in the resolution, and served in that capacity until September 30, 1896, and in accordance with such agreement was paid the sum of $100 each month for his services, and received and accepted the same in full payment of all demands against the city ; that on the thirtieth of September, 1896, he was appointed chief, at a salary of $135 per month, and continued to serve in that capacity until the first of July, 1898, and during each month of such time was paid his agreed wages for the preceding month, and received and accepted such amount in full payment of all demands against the city ;* that, as a result of this

---

*Note.—These are the exact allegations of the answer on this point: "That T. DeBoest, plaintiff herein, prior to the thirtieth day of July, 1896, filed his application for the position of assistant chief of said fire department, and agreed with the said Board of Fire Commissioners to discharge the duties of said office of assistant chief for the sum of $100 per month, and served in said capacity from the thirtieth day of July, 1896, to the thirtieth day of September, 1896, and in accordance with said agreement the said Board of Fire Commissioners made monthly requisitions upon the mayor and auditor for the sum of $100 per month for his services as assistant chief; and that the said DeBoest duly accepted and received the same and settled with the said city in accordance with the said agreement,

agreement made with the plaintiff and other firemen to accept a reduced salary, the fire commissioners were able to reduce expenses, and at the same time retain a full quota of men for the department, and otherwise a portion of them would have been discharged, thereby increasing the labors of the plaintiff and other firemen, or rendering the department less efficient; that the plaintiff knew the estimates and tax levy were based on the agreement to accept the reduced salaries, and that, knowing these things, and accepting his warrants from month to month in payment thereof during the time alleged, he is estopped from claiming the difference beween his salary as fixed by the charter and the amount he agreed to take. A demurrer to the answer being sustained, and the defendant declining to plead further, judgment was entered in favor of the plaintiff, and the defendant appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Joel M. Long*, City Attorney, and *Ralph R. Duniway*.

For respondent there was a brief over the names of *W. P. Lord* and *James Gleason*, with an oral argument by *Mr. William P. Lord*.

---

and duly received his warrant drawn by the said auditor and mayor, based upon the said requisition aforesaid.

"That prior to the thirtieth day of September, 1896, the said plaintiff was appointed chief of the fire department of said city at a salary of $135 per month, and on the first day of October, 1896, entered upon the discharge of his duties as such chief engineer, and continued upon the discharge of such duties until the first day of July, 1898.

"And that from month to month during said time the said Board of Fire Commissioners made their requisitions upon the mayor and auditor for the salaries of said firemen, and that once each month from the thirtieth day of July, 1896, to the first day of July, 1898, the plaintiff herein duly settled with the said city and Board of Fire Commissioners for all wages due for the preceding month, and received and accepted the warrant for the sum so agreed upon between the

Mr. Justice Bean, after stating the facts, delivered the opinion of the court.

There are several important questions of procedure raised by counsel for the city, but we shall not discuss them, preferring to dispose of the case upon the merits. It is sought to sustain the rulings of the court below on the ground that the resolution of the Board of Fire Commissioners reducing plaintiff's salary, and his agreement to accept such reduction, were both illegal and void, as against public policy, and, notwithstanding the fact that such agreement has been complied with, and that each month during his term of service the plaintiff voluntarily received and accepted the amount fixed by such resolution and agreement in full payment of all demands, he still has a valid claim against the city for the difference between his salary as provided in the charter and the one which he stipulated and agreed to accept, and was actually paid. It may be stated at the outset that, where the compensation of a public officer is fixed by law, it cannot be reduced by his superior officer or the person by whom he is employed, and the mere fact that he takes the reduced salary does not prevent him from claiming the residue ; nor is an agreement or promise to accept such reduced salary binding upon him : Mechem, Pub. Off. § 857 ; *State* v. *Mayor, etc. of Nashville,* 15 Lea,

---

said Board of Fire Commissioners and the plaintiff herein, which said warrants were duly presented and paid by the treasurer of said city out of the fire department fund.

"And the defendants, and each of them, allege that plaintiff was hired and agreed to accept the office and perform the duties of chief engineer for the sum of $135 per month, and assistant chief engineer for the sum of $100 per month, and during all of said time from July, 1896, to July, 1898, acting upon said agreement, received and accepted the said sum in full payment of all demands against said city. * * * and the said plaintiff stood by from month to month and allowed the said Board of Fire Commissioners to make an estimate for salaries at a reduced rate, and, from month to month, received and accepted his said reduced salary and settled with the city for his services for the previous month."

—Reporter.

697 (54 Am. Rep. 427); *Rundlett* v. *City of St. Paul*, 64 Minn. 224 (66 N. W. 967). The statutory salary of a public office belongs to the incumbent, as an incident of the office and as a matter of right; and he is entitled to receive it, not by force of any contract, but because the law attaches it to the office. It cannot be reduced except by some valid statute, and hence any attempted reduction thereof by any officer or board is void, and the mere acceptance of such reduced salary does not constitute a waiver or create an estoppel.

Accordingly it was held that the plaintiff, who was employed as fireman in 1880 by the superintendent of the capitol of New York, and continued to serve in that capacity until December, 1881, but had been paid during the summer months only one-half the daily allowance fixed by the appropriation act for "the compensation of the men employed as firemen in the capitol," was entitled to the balance, and that the attempted reduction of his salary by his superior officer was void, and the decision of the board of auditors rejecting his claim, error: *Kehn* v. *State*, 93 N. Y. 291. And again, where the legislature attempted to reduce the salary of a judge, and the act is subsequently declared unconstitutional, an acceptance of the reduced salary without protest or objection during the period of the life of the act of the legislature is not a waiver of his right to the entire salary, nor is he estopped from claiming it: *Montague's Adm'r* v. *Massey*, 76 Va. 399. So, also, in *People ex rel.* v. *Board of Police*, 75 N. Y. 38, the relator was appointed police surgeon by the board of police, under a resolution which fixed his salary at $1,500 per annum. He accepted the appointment, and discharged the duties of his office for over two years, drawing the salary as fixed by the resolution. In a subsequent proceeding to compel by mandamus the police commissioners to draw a requisition on the auditor

for an amount sufficient to pay the difference between the amount so fixed and that provided by an act of the legislature, it was held that the board had no power by resolution to reduce the salary, and that the acceptance of the appointment by the relator, and his subsequent discharge of the duties of the office, and taking the amount of the reduced salary, was not a waiver of the statutory salary and an acceptance of the one fixed by the board. See, also, to the same effect, *People ex rel.* v. *French*, 91 N. Y. 265; *Board* v. *City of Decatur*, 64 Tex. 7 (53 Am. Rep. 735); *State* v. *Mayor of Nashville*, 15 Lea, 697 (54 Am. Rep. 427).

Within the doctrine of these cases, the resolution reducing the plaintiff's salary, and his agreement to receive such reduced compensation, were both void, as against public policy, and would have been no defense to a claim by him for his statutory salary. But neither this rule, nor the decisions cited, meet or cover the facts and conditions of the case in hand. Here there was not only a resolution reducing the plaintiff's salary, and an agreement by him to accept such reduced salary in lieu of that prescribed by the charter, but such agreement had been fully executed before the commencement of this proceeding,—a feature not to be found in any of the cases referred to, and which, in our opinion, is sufficient to bar recovery. Notwithstanding the fact that the resolution of the board and the plaintiff's agreement to accept the reduced salary were void, he clearly had a right to release the city from any claim for his salary over and above the stipulated amount; and when at the end of each month he accepted the reduced salary as full compensation for his services for the preceding month, in pursuance of his agreement, it was, in our opinion, substantially the same as if he had made a donation to the city of the difference between his agreed and the statu-

tory salary. ' It was a voluntary act on his part, in pursuance of an agreement or contract entered into by him, and there is no reason why he ought not now to be bound by it. No one will question but that he could have given to the city a portion of his salary after it had been earned ; and no substantial distinction is perceived in principle between such a gift and the case in hand. It can be a matter of no consequence, so far as the principle is concerned, whether he collected his entire salary, and then returned a portion of it to the public treasury, or voluntarily accepted in the first instance but a part in lieu of the whole. Where a public officer enters into an agreement with the board or person by whom he is employed or appointed to accept an office and discharge the duties thereof for a less compensation than that provided by law, and such an agreement has been fully executed and performed, although invalid, as against public policy, at its inception, it is, after having been so executed, in our opinion, binding in law, as it always was in morals.

This principle is illustrated by the case of *Hobbs* v. *City of Yonkers*, 102 N. Y. 13 (5 N. E. 778), which, although it differs somewhat in its facts from the case at bar, and is perhaps not directly in point, is instructive upon the question now under consideration. In that case the plaintiff agreed with the common council that, if he was appointed city treasurer, he would pay into the treasury all fees over $2,000 per annum, although, under the statute, he was entitled to retain the entire amount. He remained in office three years, paying into the treasury each year all fees collected, except $2,000, and finally settled his accounts on that basis. It was held that, having assented to the arrangement, and it having been fully executed, the amount named in the agreement must be considered as the salary to which the plaintiff was

entitled, and that he could not claim any other or greater amount, although the agreement, at its inception, was void and inoperative for any purpose. "The agreement was a voluntary one," says MILLER, J., "and there is no sufficient ground for claiming that any fraud or deceit was practiced, by means of which the plaintiff was induced to forego his right to the full compensation provided by law for his services, and to accept the amount fixed in lieu thereof. The agreement thus entered into was fully performed and executed. It was not an executory agreement, against which a party could set up any legal defense, and justify his refusal to perform the same. All of its conditions had been carried into effect and executed before this action was commenced, with the consent and approval of all the parties. As we have seen, the plaintiff had settlements with the common council annually upon the basis of this agreement, assuming that it was valid and effectual, and thus he precluded himself from repudiating the same. Conceding that the agreement was illegal and invalid, the plaintiff had a perfect right to release the city from all claims he had for services beyond the amount which he had agreed to accept. Had he executed an instrument to that effect purporting to be in full of all demands on account of his fees, no serious question could arise that it would be effectual for such a purpose, and that he would preclude himself from asserting any further right to compensation. He has substantially and really, by his conduct in the transaction of the business, done all this, and by his repeated settlements, in which he has accepted the compensation agreed upon virtually discharged the defendant from any further liability."

And, in *O'Hara* v. *Town of Park River*, 1 N. D. 279 (47 N. W. 380), it was held that although the fact that a town marshal rendered his bill for services and received

his pay for two months, without objection or protest, at a rate less than that fixed by law, will not preclude him from claiming the full pay for the subsequent months of his term, it will prevent him from recovering any additional compensation for services for the time covered by the period indicated, on the ground that by his acts he has assented to receive such reduced compensation in lieu of that provided by law. The court says : "It is true that a party cannot, before election to office, bind himself by an agreement to receive less salary, if elected, for the performance of the duties of such office than the law fixes. But after the performance of the services the party may receive less compensation therefor than the legal salary, if he choose so to do. And where he renders a bill purporting to cover such services, and the whole thereof, and such bill is allowed and paid as rendered, and payment accepted without objection or protest, it amounts to an adjudication, and, in the absence of surprise, accident, or mistake of fact, cannot be reopened. Parties cannot so divide their claims and present them by installments." In the latter case the court refers to certain authorities holding that the mere acceptance by an officer of compensation less than that provided by law does not prevent him from recovering the balance, and says that "in those cases certain sums were paid and receipted for, but no bills were rendered or any acts done from which the court could gather the assent of the plaintiffs to receive their reduced salary."

And this, we believe, is the controlling factor in cases of this character. The mere acceptance by an officer of a salary less than that prescribed by the statute will not bar a recovery for the residue, because the law will not imply from that act alone the voluntary assent of the officer to receive such reduced compensation, but will consider it in the nature of a partial payment on the

salary to which he is lawfully entitled. But where the officer actually agrees to the acceptance of the reduced salary, and, after it has been earned, does so accept it, he will be. held to be bound by his agreement and contract, the same as in any other case. An executory agreement to discharge the duties of an office for a compensation less than that fixed by statute is void, as against public policy. When the law fixes the salary of an office, the incumbent is entitled to it, and no executory agreement which he may make will prevent him from receiving it, if he so desires. But, where the salary has been earned, no principle of public policy is violated by his voluntary acceptance, in lieu thereof, of an amount less than that provided by the statute. And his assent to do so may be inferred from his conduct, as in the *Hobbs* and *O'Hara Cases*, or may be the result of an express agreement, as in the case in hand. In either event, the result is the same. It therefore follows that, although the resolution of the board reducing the plaintiff's salary, and his agreement in the first instance to accept it, were void, as against public policy, the contract having been fully executed, with his assent and approval, he cannot recover the residue. The judgment of the court below must therefore be reversed, and it is so ordered.                                    Reversed.

### On Petition for Rehearing.

Mr. Justice Bean delivered the opinion.

The argument of counsel for respondent would be forceful if, as it assumes, there was no agreement by plaintiff to accept the office at the salary specified in the resolution of the Board of Fire Commissioners, except such as may be implied from his conduct. But such an assumption is contrary to the positive allegation of the

answer, that he "was hired and agreed to accept the office and perform the duties of chief engineer for the sum of $135 per month, and assistant chief engineer for the sum of $100 per month, and,   *   *   *   acting upon such agreement, received and accepted the said sum in full payment of all demands against the city;" which allegation, for the purposes of this appeal, must be taken and accepted as true.   Petition for rehearing is therefore denied.                            REHEARING DENIED.

Decided 31 July, 1899.