JOHN A. BOYLE, Respondent, v. OGDEN CITY, a Municipal Corporation, Appellant.

No. 1357. (68 Pac. 153).

1. Municipal Corporation: Mayor: Salary: Change in Salary: Estoppel.

A city council, shortly after the election of a mayor, passed an ordinance reducing his salary one-half, and the ordinance was approved by him, and he received his warrants for the reduced salary without objection, and his reports showing the disbursements of the city included his salary as so fixed. The mayor, in his first message to the council, issued before the passing of the ordinance, stated that they were all elected on a pledge of economy, and advised the reduction of expenses in all departments of the city government. Before his election the

mayor had published a letter in which he stated that he was in favor of economy, and would be willing to have his salary reduced one-half, or abolished, if desired by the taxpayers. *Held,* sufficient to estop the mayor, after the expiration of his term of office, from recovering the difference between the salary as existing before the passage of the ordinance and that fixed therein, though the mere executory agreement on his part to act as such mayor for one-half the usual salary was invalid.[1]

2. **Same: Evidence: Admissibility.**

Evidence was admissible in behalf of the city, in such action, of the acts and conduct of the mayor, and of letters and promises made by him in reference to his salary, though made prior to his election.

(Decided March 18, 1902.)

Appeal from the Second District Court, Weber County.— *Hon. H. H. Rolapp,* Judge.

, Action by the plaintiff to recover $1,200, with interest, which he claims is due him as a balance of salary for his services as mayor of the defendant city. From a judgment in favor of the plaintiff, the defendant appealed.

REVERSED *(with directions).*

*Herbert R. Macmillan, Esq.,* for appellant.

In the case at bar the mayor's salary was adjusted on the basis proposed by him in his ordinance. It was a voluntary act on his part. There was no fraud or deceit practiced, which induced Mr. Boyle to forego his rights. He went at it with his eyes open, even knowing the ordinance had been in part declared void in the case of Hulaniski v. Ogden City and in Meisner v. Boyle. The agreement was fully performed and executed. At the end of each year reports were

---

[1] Hulaniski v. Ogden City, 20 Utah 233; 57 Pac. 876, distinguished.

made by the mayor to the council showing how much he among others had been paid and how much was in the treasury. At the end of his term in his report he rendered an account of the city's proceedings, affairs and finances, to the council. Then why should not this court hold that these annual reports and accounts are accounts stated and were an acknowledgment by Boyle that he had received full compensation for his services and as such are a release from any further liability? Why should not this court hold that the agreement was fully performed and wholly executed and could not therefore be attacked for lack of consideration? Why should not this court hold that Mr. Boyle by his own acts will be estopped from claiming any more salary? Hobbs v. City of Yonkers, 5 N. E. 780; DeBoest v. Gambell (Or.), 58 Pac. 73; O'Hara v. Town (N. D. 1890), 47 N. W. 380; Thomas v. St. Clair (Mich.), 45 Mich. 479; Love v. Mayor, 40 N. J. L. 456; Harvey v. Tama County (Iowa), 5 N. W. 180.

*H. H. Henderson, Esq.*, for respondent.

It being the law that Boyle was entitled to draw a compensation of $1,200 per annum, the next question is has Boyle done anything before or since his election as mayor to waive his right to draw such salary?

In arguing this question I submit three propositions:

1. Boyle entered into no agreement with the city before or after his election to accept $600 per annum, or any other sum, in payment of his salary.

2. Boyle rendered no statement or any account whatever of the amount that he claimed to be due him from the city until just before the commencement of this suit and in that statement he demanded $1,200.

3. Boyle never signed any receipt for any salary that was ever paid to him.

Boyle v. Ogden City.

STATEMENT OF FACTS.

The plaintiff brought this action to recover $1,200, with interest, which he claims is due him as a balance of salary for his services as mayor of the defendant city. It appears from the record substantially, that on November 2, 1897, he was elected to the office of mayor of Ogden City, Utah, for the term of two years, commencing on the first Monday in January, 1898; that he qualified, and discharged the duties of that office during the whole term; that, at the time of his election, an ordinance fixing the salary of mayor at $1,200 per annum, payable in monthly installments of $100 each, was in force and effect; that subsequent to November 2, 1897, and prior to January 3, 1898, the city council of the defendant city passed an ordinance which by its terms abolished all the salaries of the officers of the city; that on January 10, 1898, the city council passed an ordinance, fixing the salaries of the mayor and other officers of the city, which ordinance, on the following day, was sent to the mayor, the plaintiff herein, for approval; that on January 15, 1898, the mayor returned the same to the council, with a statement of his reasons for withholding his approval; that among his reasons for not approving the ordinance were the fixing the salary of the captain of police at $75 per month, which he recommended to be placed at $85 per month, and the fixing of the salary of city detective at $67.50 per month, which he recommended to be placed at $70; that the said unapproved ordinance fixed the mayor's salary at $600 per annum, to which salary so fixed the plaintiff made no objection, nor suggested any change; that on January 17, 1898, the council adopted the change suggested by the mayor, and again passed the ordinance; that thereupon the mayor approved the same, the approval bearing date January 18, 1898; that the plaintiff knew, before he approved the ordinance, that his salary was fixed therein at $600 per annum; that thereafter he received his

warrants each month, signed them, and got the money on them at the rate fixed by the ordinance, and made no objection thereto; and that with his annual messages he submitted to the council reports showing the receipts and disbursements of the city, which reports included his salary as fixed by the ordinance of January 18th. It further appears that the ordinance is in accordance with the recommendation of the plaintiff contained in his first message to the council, which reads: "Gentlemen, we were all elected on a pledge of economy, and it will be my duty as well as pleasure to aid you in any and every way in my power, and I recommend the cutting down of the expenses in all departments here which can be done without injury to the city. I wish to work in harmony with your honorable body, and will be pleased to give you information that may come to me." It also appears from the record that just prior to his election, while seeking the office, the plaintiff, in a letter published at that time in a newspaper of wide circulation, represented that he was in "favor of retrenchment in public expenditures in every channel," and made promises to the effect that if elected he would endeavor to reduce the taxes of the city; that he did not desire the office for the emoluments thereof; and that, if elected, he would "cheerfully be willing to have the salary cut down one-half, or absolutely abolished," if the taxpayers considered that advisable. At the trial the court found that the plaintiff was entitled to recover from the defendant the sum of $1,300, with interests and costs of suit, and entered judgment accordingly. From that judgment this appeal was prosecuted.

BARTCH, J. (after stating the facts).—We are of the opinion that counsel for the appellant is correct in his contention that the court erred in entering judgment in favor of the plaintiff. The facts and circumstances shown by the record do not appear to warrant the judgment. Undoubtedly, if the mayor had been guilty of no conduct amounting

to a waiver of a portion of his salary, or estopping him from claiming it, he would be entitled to the whole amount of the salary as fixed by ordinance at the time of his election. Notwithstanding the fact, however, that he was entitled by law to a salary of $1,200 per annum, he advised the city council to cut down the expenses in all the departments, and when an ordinance was passed reducing his own salary as well as the salaries of other officers he made certain objections to the ordinance as to the reduction in the salaries of other officers, but none as to the reduction of his own, although he was aware that the ordinance as passed reduced his salary to $600 per annum. Then, upon the council acceding to his recommendations, he approved the ordinance, and thereafter received his warrants and the money thereon at the rate fixed by the new ordinance, without any objection whatever. In his annual messages he reported to the council the receipts and disbursements for the preceding year. The reports, showing the financial condition of the municipality, included his own salary, and virtually were equivalent to an account stated, and indicated a settlement with him on the basis of $600 per annum, instead of $1,200, to which he would have been entitled, under the ordinance in force at the time of his election, had he not waived his rights by his own acts and conduct. His acts and conduct, however, as shown by this record, were of such a character that they may be justly regarded as amounting to an agreement that he would serve the municipality as mayor for the sum of $600 per annum; and while it must be conceded that such an agreement was invalid, still, after both parties had acted under it with full knowledge of the facts until it was fully performed, the mayor was then in no position to avoid it and claim the balance of salary to which, but for his own conduct, he would have been entitled under the law. After the performance it was an executed agreement, and, under the circumstances of this case, the courts will not interfere with it. The respondent, by his con-

duct in the premises, released the municipality from any additional or further claim, or, in other words, simply donated to the city a portion of his salary, and we know of no law which prevented him from doing this, or from donating all his salary if he had chosen to do so. He has thus by his own acts and conduct estopped himself from claiming further compensation for his services as mayor. In Hobbs v. City of Yonkers, 102 N. Y. 13, 5 N. E. 778, a case in many respects similar to the one at bar, the plaintiff had agreed with the city of Yonkers that if he was appointed treasurer he would pay into the city treasury all fees received by him in excess of $2,000 per annum. He was thereupon appointed, and entered upon and discharged the duties of his office, and received for his compensation $2,000 per annum. After the expiration of his term he sued for the balance of his fees, which he claimed he was entitled to under the law. The court, however, held adversely to his contention, and in the course of its opinion, delivered by Mr. Justice Miller, in which all the justices concurred, it was said: "Conceding that the agreement was illegal and invalid, the plaintiff had a perfect right to release the city from all claims he had for services beyond the amount which he had agreed to accept. Had he executed an instrument to that effect purporting to be in full of all demands on account of his fees, no serious question could arise that it would be effectual for such a purpose, and that he would preclude himself from asserting any further right to compensation. He has substantially and really by his conduct in the transaction of the business done all this, and by his repeated settlements in which he has accepted the compensation agreed upon, virtually discharged the defendant from any further liability. These accounts stated and rendered to the common council, and assented to by them as correct, are an effectual bar to any recovery in this action. At the close of his term of office he rendered his final account, and at the

24 Utah—29

end thereof accepted a receipt from his successor to the effect that he had paid over to him several thousand dollars belonging to the city. These annual accounts, which were presented by the plaintiff to the common council and accepted by them as correct, contained the elements of accounts stated which are equivalent to an acknowledgment that he has re-' ceived full compensation for his services and to a release for any further claim on account thereof. Such an account stated can not be disturbed except by an action in equity for that purpose, showing that the party has been misled by fraud, mistake, or manifest error. This is not established, and there is no valid ground for setting aside the settlements which have been made between the parties." Then, in distinguishing certain cases in which the court had held that an officer of a municipal corporation could not be compelled to take less compensation for his services than that fixed by law, and upon which cases plaintiff relied, it was said: "He made repeated annual reports, each one of which was equivalent to an account stated, and finally he made a settlement of his entire claim by accepting a receipt for the balance in his hands, thus carrying into effect the agreement he had made, and virtually releasing the city from any additional or further claim. He has thus by his own acts estopped himself from claiming the benefit of the principle decided in the cases cited. There was no such characteristic in any of these cases cited as is presented in the case at bar, and they are not applicable to the facts appearing in the record before us." So, here, the respondent relies upon the case of Hulaniski v. Ogden City, 20 Utah 233, 57 Pac. 876, where the court, speaking through Mr. Justice Baskin, held the ordinances, including that approved January 18, 1898, abolishing and diminishing salaries of city officers of Ogden City, void, as to an officer whose salary was fixed by ordinance for his term, at the time he was elected; and that any attempt on the part of the city council to abolish or alter the salary of such officer, and fix it at an

amount less than the amount provided by ordinance at the time of his election, was of no effect as to him.   As in the New York case, where the decisions relied upon did not apply, so, in this case, the decision in the Hulaniski case does not apply, and may be easily distinguished.   The facts in the two cases differ materially.   In the Hulaniski case the officer was not shown to have been guilty of any acts or conduct which estopped him from claiming his salary in amount as fixed at the time of his election.   As we have seen, it is otherwise in this case.   The views herein expressed are also in harmony with those in other decisions.   The Supreme Court of Oregon, in De Boest v. Gambell, 35 Or. 368, 58 Pac. 72, 353, where a public officer had agreed to accept less than the amount fixed by law as his salary, and afterwards sought to compel payment of the difference between the amount agreed on and the amount as fixed by law, while declaring such an agreement or stipulation by a public officer void, held that an acceptance of less than the amount due, in pursuance of an agreement to that effect, was binding, and that no recovery could be had for the unpaid balance.   In due course of the opinion, delivered by Mr. Justice Bean, it was said: "Notwithstanding the fact that the resolution of the board and the plaintiff's agreement to accept the reduced salary were void, he clearly had a right to release the city from any claim for his salary over and above the stipulated amount; and when at the end of each month he accepted the reduced salary as full compensation for his services for the preceding month, in pursuance of his agreement, it was, in our opinion, substantially the same as if he had made a donation to the city of the difference between his agreed and the statutory salary. It was a voluntary act on his part, in pursuance of an agreement or contract entered into by him, and there is no reason why he ought not now to be bound by it.   No one will question but that he could have given to the city a portion of his salary after it had been earned; and no substantial distinction

is perceived in principle between such a gift and the case in hand. It can be a matter of no consequence, so far as the principle is concerned, whether he collected his entire salary, and then returned a portion of it to the public treasury, or voluntarily accepted in the first instance but a part in lieu of the whole. Where a public officer enters into an agreement with the board or person by whom he is employed or appointed to accept an office and discharge the duties thereof for a less compensation than that provided by law, and such an agreement has been fully executed and performed, although invalid, as against public policy, at its inception, it is, after having been so executed, in our opinion, binding in law, as it always was in morals." O'Hara v. Town of Park River, 1 N. D. 279, 47 N. W. 380; Thomas v. Supervisors, 45 Mich. 479, 8 N. W. 45; Love v. Mayor, etc., 40 N. J. Law 456; Harvey v. Tama Co. (Iowa), 5 N. W. 130.

The appellant also insists that the court erred in refusing to admit and consider certain evidence relating to letters and promises of the respondent written and made when he was seeking the office of mayor, and about the time the ordinance approved January 18, 1898, was being considered. Because of the disposition we have concluded to make of this case we do not deem separate reference to the points embraced within this contention necessary. Suffice it to say that all evidence relating to the acts and conduct of the respondent in the premises was admissible, and ought to have been considered in determining the case.

The case must be reversed, with costs, and the cause remanded, with directions to the court below to set aside its judgment and enter judgment in favor of the appellant, dismissing the action. It is so ordered.

MINER, C. J., and BASKIN, J., concur.