Linsky, Appellant, *v.* County of Luzerne.

Argued October 20, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Thomas J. Grover,* for appellant.

*John J. Hibbard,* County Solicitor, for appellee.

Opinion by Linn, J., January 30, 1931:

Linsky has judgment against the county for $280.50 entered on a case-stated; he nevertheless, appeals, contending that judgment for a much larger sum should have been entered. The case states that Andrew Vetrick and Victor Lomitch were charged with murder and were remanded without bail to await the action of the grand jury; that Linsky was held in $1,000 bail as a material witness for the commonwealth, and on March 8, 1929 was so committed to the county prison in default of bail. He was released and discharged September 11, 1929, after having been in prison 187 days. He claimed compensation from the county pursuant to the Act of March 30, 1911, P. L. 28 amended by the Act of April 17, 1913 P. L. 79, providing pay at the rate of $1.50 per day until March 21, 1929, and thereafter pursuant to the Act of March 21, 1929 P. L. 37 at the rate of $5.00 per day.

The learned court below was of opinion that plaintiff was entitled at the rate of $1.50 a day, for 187 days and entered judgment for $280.50, having concluded that the act of 1929 applied only to persons committed after its approval.

Prior to the Act of April 22, 1856, P. L. 506, entitled "to prevent the imprisonment of witnesses in certain cases," the practice of generally imprisoning witnesses had apparently become so oppressive as to lead to a recital of the injustice of such detention in a preamble to the statute of which we quote part: "And whereas, this practice is grievous and most oppressive upon the poor and innocent, and in some instances has subjected them to long imprisonment and to heavier penalties than the actual offenders themselves: And whereas, it is cruel and unjust, and contrary to the sound policy of criminal laws, that persons who have committed no offense, but who are simply called upon to establish the offense of others, should be consigned to imprisonment and exposed to disgrace." The statute designed to prevent the mischief so recited, provided that thereafter no witness entering his recognizance before the magistrate, to appear and testify in such prosecution as required his testimony, should be committed to prison, provided that in cases triable in the oyer and terminer, in circumstances specified, the magistrate might exact bail, and in default thereof, commit the witness to testify.

The practice of detaining witnesses had been followed from early times; it grew out of 1 and 2 P. &. M. c. 13 (1554); Bennet v. Watson, 3 M. & W. 1; 105 Eng. Reprint 512. The judges of the Supreme Court reported that c. 13 of 1 & 2 P. & M. was in force in Pennsylvania: Robert's Digest xlx; the text of the act appears on page 76.

The Act of April 22, 1856 was substantially carried

into the criminal procedure act of March 31, 1860, P. L. 427, as section 56, P. L. 444; 19 PS sec. 651. Witnesses in two classes of cases are provided for: 1, all triable exclusively in the oyer and terminer; 2, all other cases; the former can be committed; the latter cannot. The legislation was, of course, remedial. While the hardship theretofore existing and specifically mentioned by the legislature as the mischief to be cured, was abolished by prohibiting imprisonment of witnesses wanted in one class of cases, it remained as to those in the other class who might still be detained. If a trial was continued from term to term, or was otherwise delayed, manifest hardship to the imprisoned witness resulted as before. While it may be assumed that, generally, a district attorney or private prosecuting counsel would try cases as promptly as possible to avoid the hardship incidental to unnecessary detention of such witness, and unnecessary expense to the county, it may not always be done, and in any event some hardship must result. It is the duty of every man to testify on behalf of the state, and though he cannot require the state to pay him for time lost, or re-imburse him for expense incurred, the legislature has provided some measure of relief for loss and inconvenience suffered by detained witnesses. The Act of March 30, 1911, P. L. 28, is entitled: "To provide for the payment by the proper county of witnesses, committed and held in default of bail to appear and testify on behalf of the Commonwealth." It provides: "That any witness in any case, who shall be committed in default of bail to prison, by any judge, alderman, magistrate, or justice of the peace, to appear and testify in behalf of the Commonwealth, shall be paid, out of the treasury of the proper county, the sum of one dollar and fifty cents for each day or part of a day such witness shall be detained in prison." That

act was amended April 17, 1913, P. L. 79 by adding after the words "justice of the peace" the words "or coroner."

Such legislation, requiring the county to pay the detained witness by the day, should result in effort by the district attorney, and others having to do with the prosecution for crime, to shorten the detention by trying the case as soon as possible.

Appellant, Linsky, had been committed under that act; for that detention resulting from that commitment he was entitled at the rate of $1.50 for each day that he was detained, subject, of course, to the power of the legislature to direct otherwise, either by abolishing compensation or by increasing the amount.

Our question now is, what effect on Linsky's detention had the approval of the Act of March 21, 1929, P. L. 37? That act is entitled: "For the compensation by counties of persons detained as material witnesses in criminal prosecutions." It provides: "That whenever hereafter any person is detained in prison in connection with any criminal prosecution as material witness, by order of the court or of any district attorney, or by commitment by any magistrate, alderman, or justice of the peace, such person shall be entitled to compensation at the rate of five dollars ($5) for each and every day so detained as a material witness, which compensation shall be paid by the county in which detained, forthwith upon the discharge or release of such material witness." It contains no clause expressly repealing former legislation. It slightly differs from the act of 1911 in phraseology; by the earlier act a witness who was committed was entitled to $1.50 a day, while the act of 1929 merely says that any person "detained in prison" as a material witness shall be entitled to $5. for each day he is detained. The detention must be pursuant to commitment by one having power to commit, and one can

only be committed by strictly following the act of 1860, s. 56; for any other crime than those triable exclusively in the oyer and terminer, the witness may not be committed, and the county cannot be required to pay; any doubt about the right to commit a witness, may always be resolved by appropriate habeas corpus proceedings.

We understand appellee to agree that the act of 1929 applies to any witness properly committed after the date of its approval. What was the purpose of the legislature in passing it? It may well be, that in harmony with the legislative policy announced in 1856, the act of 1929 was designed to diminish periods of detention; such diminution may readily result from a desire on the part of county officers to avoid long periods of detention and the corresponding payment of large. sums to such witness, by the more prompt trial or other early disposition of the prosecutions. The legislature may also have taken into consideration the difference in the purchasing power of money between 1911 and 1929, and may have intended to afford reasonable compensation to the witness, in view of possible benefit to his dependents during the period of detention. Such, among other reasons, may have induced the legislation broadening the remedial scope of the earlier acts and, so considered, it would seem that the act of 1929 was applicable to every witness who was detained on the day the act of 1929 went into effect whether he had been committed before or not.

We are of opinion that, construing the language in its plainest sense, as we must, the act provides that every witness who is detained on the day the act of 1929 became effective, or thereafter, is entitled to the fee provided. Certainly Linsky was detained in prison when the act became effective, although he was committed long before; it is the days' detention that in-

cur the liability. Appellee reads the act as providing $5. a day for persons committed thereafter, instead of detained thereafter. The act amends the acts of 1911 and 1913 by raising the compensation of $1.50 to $5 per day. This construction effectuates the legislative purpose by further ameliorating the hardship long ago recognized; it also is in harmony with well settled principles of statutory interpretation. In Rodenbaugh v. Traction Co., 190 Pa. 358, 360, the rule is stated as follows: "The legislature expresses its will in any form, affirmative or negative, that it pleases, so long as it does not transgress constitutional prohibitions. It is under no obligation in changing the law to use words of express repeal of any previous statute. It is frequently convenient that it should do so to aid the courts in reaching its true intention, but it is never obligatory. Nor is there any duty on the courts to so construe a new statute that it shall not affect a prior one on the same subject. It is always a question of the legislative intent. The presumption of course is that the statute expresses the full intent, and when therefore it is sought to extend the provisions beyond what their words express, the extension must appear by strong, if not by necessary, implication to be within the actual intent. It is in aid of the discovery of such intent that the principle is applied that a merely affirmative statute shall not be held to repeal a previous one, if by fair and reasonable construction both can stand consistently together. Where, however, the intent of the later act is clear, no repugnancy to a prior one will authorize a construction against such intent."

The judgment is reversed and the record is remitted with instructions to enter judgment for plaintiff in accordance with this opinion, with interest from the date of demand (Koch v. Schuylkill Co., 12 Pa. Superior Ct. 567).