[Civ. No. 1096.   Fourth Appellate District.—August 2, 1934.]

P. N. MYERS, Appellant, v. THE CITY OF CALIPATRIA (a Municipal Corporation), Respondent.

P. N. Myers, *in pro. per.*, for Appellant.

W. I. Wilson for Respondent.

MUNDO, J., *pro tem.*—The plaintiff had been serving the City of Calipatria as its elected city clerk at a salary fixed by ordinance in the sum of $100 per month. By the same ordinance the salary of its deputy city clerk was fixed at $80 per month, the salary of its city attorney at $75 per month, and the salary of the deputy tax collector at $75 per month.

On April 19, 1928, while the plaintiff was so serving as city clerk, the following minute order was made and entered by the city council of defendant city: "On motion of Councilman Montgomery, seconded by Councilman Gullet, and carried, P. N. Myers was appointed to the office of city attorney, to take effect May 1st, 1928, he to be paid the

compensation fixed by ordinance, viz.: $75.00 per month, but with the reservation that the city shall be at no further expense for a deputy city clerk as long as said appointment shall remain in force.'' On the same day plaintiff was also appointed deputy tax collector. He served in all three capacities until October 5, 1929.

During the period from May 1, 1928, to October 5, 1929, plaintiff appointed certain deputy clerks whose total amount of earned salary was the sum of $1,025, which he alleges he paid out of his own money for the use and benefit of the city.

On July 14, 1931, almost two years after plaintiff had left the employ of the city, a claim for the money so paid was presented to and rejected by the city council. This action was then brought to recover the sum so paid. The defendant demurred to the second amended complaint generally and specially, which demurrer was by the court sustained without leave to amend, and judgment of dismissal was entered in favor of the defendant. ■ Upon this appeal, taken by the plaintiff, the question involved is: Does the appointment of a city attorney by the city council of a city of the sixth class, subject to a reservation that the city shall be to no further expense for a deputy clerk as long as said appointment shall remain in force, authorize the city attorney, so appointed, to pay the salaries of deputy clerks, and, thereafter, collect the same from the city?

Plaintiff contends that: 1. The effect of the minute order was to compel him to pay the salaries of the deputy clerks or be deprived of his appointive offices. 2. If an officer accepts an office, the compensation of which it has been attempted illegally to reduce, and receives the compensation at a reduced rate, he is not estopped from claiming the balance as fixed by law. 3. The amount of compensation as fixed by law may not be changed by agreement, and any agreement attempted to be made which provides for compensation different from that fixed by law is void as against public policy.

■ The appointing board has no power by minute order to reduce the salary of a statutory officer when fixed by ordinance. Where the officer actually agrees to the acceptance of the reduced salary, before his appointment, and, after the salary had been earned, does so accept it, the officer

will be held bound by his agreement and contract, the same as in any other case. (*De Boest* v. *Gambell,* 35 Or. 368 [58 Pac. 72, 353].)

The minute order did not require plaintiff to pay any salaries. There is nothing in the order which, by any fair construction, can be interpreted to contemplate the payment of money by anyone, and certainly no construction could be placed upon said order which would give rise to a conclusion that the order contemplated a reduction in plaintiff's salary as clerk.

It was discretionary with the city council whether the office of city attorney should be filled or not. (Municipal Corporation Act, secs. 852, 879.) Plaintiff's acceptance of the office was entirely optional with him; his refusal to accept could not have prejudiced his rights as city clerk. Having accepted the appointment with full knowledge of the circumstances it must be presumed he fully acquiesced in the arrangement. The payments made by plaintiff apparently were made without any protest on his part. This may properly be construed as a further indication that the payments were voluntary.

If the plaintiff were compelled to pay the salaries of the deputy clerk in order to protect his rights as clerk, or even to protect his rights as city attorney, a different situation would be presented, but where, as here, certain arrangements are made in advance of the appointment, and such arrangements have been fully executed and performed, the appointee will be held to them. It is one thing to agree with an officer before he enters upon his term of office as to the compensation he should receive, and quite another to hold over him, while in office, the menace of a removal therefrom unless he consents to a reduction of his salary and by that means induce him to consent to such a reduction. (*Nelson* v. *City of Superior,* 109 Wis. 618 [85 N. W. 412]; *Hobbs* v. *Yonkers,* 102 N. Y. 13 [5 N. E. 778].)

There is nothing in the second amended complaint to warrant a conclusion that the payments made by plaintiff to the deputy clerks were not what is known in law as voluntary payments, free from duress. If, as plaintiff contends, the minute order was illegal and void, it could not of itself constitute grounds for relief. There must be, in addition, some compulsion or coercion attending the order,

which controlled the party making the payments. As said in *Brumagim* v. *Tillinghast*, 18 Cal. 266, at page 271 [79 Am. Dec. 176]: "It is the compulsion or coercion under which the party is supposed to act which gives him a right to relief. If he voluntarily pay an illegal demand, knowing it to be illegal, he is of course entitled to no consideration; and if he voluntarily pay such demand in ignorance or misapprehension of the law respecting its validity, he is in no better position, for it would be against the highest policy to permit transactions to be opened upon grounds of this character."

What constitutes the compulsion or coercion which the law recognizes as sufficient to render a payment involuntary is often a question of difficulty. It may be said in general that there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment from which the latter has no other means of immediate relief than by advancing the money. (*Bucknall* v. *Story*, 46 Cal. 589 [13 Am. Rep. 220].)

Reading the second amended complaint in the light of these rules, and assuming that the minute order was void, the payments made by appellant must be deemed to have been voluntary. It evidently was the mutual understanding of the council and the plaintiff that in appointing him city attorney the city would not, as long as the appointment remained in force, be required to pay the salary of a deputy city clerk. Also, it seems reasonable to conclude that if the services of a deputy clerk should become necessary the council would be in a position to handle the matter, and possibly, if necessary, dispense with the services of an attorney. It is not at all likely that the council would have appointed plaintiff if it had been suggested or intimated by him that he claimed, or would claim, that the city should pay the salary of a deputy clerk during the period of his appointment as city attorney. (*City of Lexington* v. *Crane*, 105 Ky. 779 [49 S. W. 787, 50 S. W. 1106]; *De Boest* v. *Gambell, supra.*) The plaintiff did not have to accept the appointment of city attorney, and, having accepted it, he was at liberty to resign at any time. No coercion or compulsion was exercised upon him. Whatever action he chose to take

regarding the attorneyship could not have affected his rights and salary as clerk, and his appointment as attorney was not conditioned upon the surrender of any right, privilege or emolument appertaining to the office of attorney. Plaintiff understood, and by his own conduct assented to, the arrangement. If he voluntarily paid the salaries of the deputy clerks, knowing full well that the city under the arrangement was not to be held for said salaries, he should not at this late date be allowed to recover from the city. (*Coyne* v. *Rennie*, 97 Cal. 590 [32 Pac. 578].)

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.