## Hanley v. City of Philadelphia

*John P. Connelly,* for plaintiff.

*A. L. Shapiro,* assistant city solicitor, and *Joseph Sharfsin,* city solicitor, for defendant.

LEVINTHAL, J., June 4, 1938.—This is one of 33 suits brought by former real estate assessors against the City of Philadelphia to recover the amount of salary reductions during the years 1932 and 1933. By stipulation, the evidence in every case will apply to each case, and this opinion will determine all the cases.

Plaintiff's annual salary is set at $5,000, by the Act of May 7, 1927, P. L. 857, 72 PS §4984. The city, by Ordinance of December 31, 1931, sec. 31 (Ordinances and City Solicitor's Opinions of 1931, pp. 451, 623), provided that all salaries for 1932, including plaintiff's, should be reduced 10 percent. Actually, plaintiff received from the city less than 90 percent of his salary in 1932, for there was a deficiency in the city's funds available for salary payments in December, so that plaintiff claims that his statutory salary was improperly reduced in the total sum of $743.10 for that year. For 1933 the reduction was 23 percent of that portion of the salary in excess of $600: Ordinance of January 16, 1933, sec. 31 (Ordinances and City Solicitor's Opinions of 1933, pp. 1, 160; and plaintiff claims that the city is indebted to him in the sum of $1,012.16 for reductions from his statutory salary in 1933.

The assessors, all members of an association, at a meeting called to take action on the financial condition of the city, on November 25, 1931, resolved to accept "a voluntary reduction of 10 percent of their salaries for the year 1932, providing that all other elective and appointive officials in city and county departments agree to do the same, receiving similar or greater salaries." In fact, the reduction was not accepted by all city and county employes.

At the outset of 1932, plaintiff signed a power of attorney authorizing the paymaster of the board of revision of taxes to receive for plaintiff as the amount payable to him a sum 10 percent less than his statutory salary, and at the beginning of 1933 a similar power of attorney was executed authorizing acceptance of a sum approximately twenty percent less than the salary fixed by statute, in each instance the reduction being equivalent to that stipulated in the city's ordinance. Each time he received his semi-monthly salary, plaintiff signed a pay-roll sheet upon which was stated, in columns, the following information: basic pay, $5,000; semi-monthly rate, $208.33; 10 percent reduction, $20.83; amount earned, $187.50;* amount payable, $187.50. Printed upon the sheets, as upon all former sheets, was the receipt:

"We, the undersigned, hereby acknowledge receipt from Stanley D. Tunney, chief clerk, Frank Silver, executive clerk, of the respective sums set forth opposite our names in the column 'Total Amount Payable' the same being for services during the period stated upon this pay roll."

Such a sheet was signed twice every month during 1932 and 1933.

There was evidence offered by defendant that the assessors, acting through their paymaster, had regularly during 1932, beginning in May, deposited a portion of their

---

* At the beginning of 1932 the amount stated to have been earned was equivalent to the basic salary rather than to the amount payable. This was attributed to a clerical error. See Reedmoyer v. City of Philadelphia, C. P. No. 6, March term, 1937, no. 3066, N. T. pp. 11-14.

salaries in bank in a common account, with the understanding that these sums were to be repaid them during the latter part of the year, when, it was expected, the city's financial difficulties would make salary payments, even in the reduced amounts, impossible. These deposits were made by deductions from the money received by the paymaster from the city treasurer, the deductions being made before the money was paid over to the assessors. The amounts received from the treasurer were stricken from the payroll sheet by lines drawn through them, and in their place were typed the sums each man actually received in cash from the paymaster.

For the first payroll period in December 1932, the paymaster received from the treasurer for plaintiff only $126.66, instead of $187.50, which was the amount needed to pay the salary on the 10 percent reduced basis, and for the last pay-roll period in December 1932, no money whatsoever was paid by the treasurer to the paymaster for plaintiff. The assessors, however, for the first period in December 1932, signed a payroll sheet made up in the usual fashion during the year 1932, that is, for the basic salary, less 10 percent. No receipt was signed by the assessors for the period from December 15 to 31, 1932. The money they received from the paymaster was money drawn from their joint account created by the deposits described above, in addition to the sum of $126.66 paid by the treasurer for the first half of December for each assessor's salary.

Recently, in the opinions in Taylor v. Philadelphia, 126 Pa. Superior Ct. 196, and Patton, Executrix, v. Philadelphia, 126 Pa. Superior Ct. 212 (1937), the Superior Court, after careful study and thorough citation stated the principles pertinent here. We may take this to be the law: That the Act of 1927, supra, and the Pennsylvania Constitution, art. III, sec. 13, deny to the city the power to reduce plaintiff's salary; that a public officer cannot bind himself by agreement to accept in the future a lesser salary than that provided by statute; and that the mere

acceptance by him of the lesser amount, even without protest, does not constitute a waiver of his right to the difference. But a voluntary donation to the municipality of the amount of the reduction is valid and will bar the officer from a subsequent recovery. See also the cases collected in 70 A. L. R. 972 (1931).

This case falls within the last rule. The evidence convinces us that on each pay day, except for December 1932, when plaintiff receipted for his salary, he intended to, and it reasonably appeared that he did accept the amount given him as full payment for the period immediately preceding, and that the balance was donated to the city. In each instance he received the reduced salary payments as the "total amount payable" to him. This was no executory contract, to bind him in the future. The powers of attorney drawn at the outset of the years 1932 and 1933 were, it is true, executory, but they were acted upon by plaintiff's agent, and that action was ratified by the receipts executed by plaintiff. It is by reason of the receipt, coupled with the power of attorney, that we find that plaintiff voluntarily donated the salary reductions. He did not merely passively accept the salary tendered him. He acted positively and affirmatively, voluntarily relinquishing the reductions in order to receive the balance, and he was motivated by the realization of the city's plight.

In the Taylor case there was an express reservation by the officer, in writing and upon the payroll, of his right to receive the balance of his salary. That, of course, is different from this case, where we have no protest at all. And the evidence in the Patton case likewise differs, for there no payroll receipt sheet was introduced, and the court had before it, as the opinion and paper books show, only the executory power of attorney to the paymaster to receive the officer's salary from the city treasurer in the future, and, furthermore, that power of attorney did not mention "total payment".

The receipt is significant, as the court recognized in the Taylor case, where, as one reason for distinguishing Taskey v. Pittsburgh, 123 Pa. Superior Ct. 573 (1936), it said, at page 208, that the claimant in the latter case "acknowledged receipt of his wages in full". And this was proper. The receipt for the *total amount payable* construed with the power of attorney and the other circumstances present here, following the work period, and after plaintiff had been paid, is evidence of a voluntary donation. Or perhaps it may be treated as in the nature of an account stated. See Hobbs v. City of Yonkers, 102 N. Y. 13, 5 N. E. 778 (1886), O'Hara v. The Town of Park River, 1 N. D. 279, 47 N. W. 380 (1890), De Boest v. Gambell, 35 Ore. 368, 58 Pac. 353 (1899), and Second National Bank of Ashland v. Ferguson, 114 Ky. 516, 71 S. W. 429 (1903).

So far as we find for defendant we do not rely upon the resolution of the assessors' association, which relates only to 1932 and is inconclusive even as to that year because the stipulated condition was not actually complied with. Nor do we rely upon the deposits by the assessors in the joint account. The latter, at best, can mean only that plaintiff was aware of the city's poor financial condition; it does not necessarily evidence an intent to make a gift of the reductions.

What we have said above applies to the first 11 months of 1932 and to all of 1933, but not to the two payroll periods in December 1932. For the period from December 15 to 31, 1932, no money at all was received by the paymaster from the treasurer for plaintiff and no receipt was signed by the latter. Neither the paymaster nor plaintiff did anything indicative of a gift or release of any portion of the salary for this semi-monthly period, even of the 10 percent theretofore regularly donated. Therefore, plaintiff is entitled to recover the full amount of his statutory salary for the second half of December 1932, namely, $208.33.

As for the first part of that month, the paymaster was authorized to accept $187.50, and plaintiff receipted for that amount. There is no evidence that he was aware that the paymaster had received only $126.66 from the city treasurer, nor that the difference between $187.50 and $126.66, or $50.84, was made up from the assessors' joint account. It cannot properly be said that plaintiff intended to make a donation of the sum of $50.84 to the city, but it is clear that he did intend to relinquish his right to everything above $187.50. He therefore should recover $50.84, for the first period of December, in addition to the aforesaid sum of $208.33, or a total of $259.17.

It is urged by the city that interest should be allowed upon the amount recovered from the time of demand only, and not from the time the salaries were due and payable. The law on the subject in this jurisdiction is confused, and little of it pertains to municipalities as distinguished from the Commonwealth itself.

There is old authority that the sovereign holds no special position here: Respublica v. Mitchell, 2 Dall. 101 (1788). See also Haslam v. Philadelphia, 314 Pa. 225 (1934), where the point was not raised. From other decisions, involving counties, it would appear that interest runs from the time of demand. See Koch v. The County of Schuylkill, 12 Pa. Superior Ct. 567, 572 (1900), and Linsky v. County of Luzerne, 101 Pa. Superior Ct. 42, 48 (1931). One case, Milne v. Rempublicam, 3 Yeates 102 (1800), is not entirely clear, but allowed interest in part. Recently, the view has been that interest cannot be had in the absence of express statutory permission: Philadelphia v. Commonwealth, 276 Pa. 12 (1923) ; Puloka v. Commonwealth et al., 28 D. & C. 367 (Dauphin County, 1936) ; Conn et ux. v. Commonwealth, 28 D. & C. 611 (Juniata County, 1936).

The last may be taken to represent the general weight of authority as to suits against States. We see no reason for a different rule for municipalities, especially when, as here, the claim arises out of the performance of what is

essentially a governmental function, although by a smaller and more convenient governmental unit. There is authority for that position: Smith v. The Board of Education of the City of New York, 208 N. Y. 84, 101 N. E. 791 (1913), Ann. Cas. 1914D 406.

The bases commonly assigned for this principle—that the sovereign is presumed ready to pay its debts, that to compel the State to seek its creditors would be too heavy a burden, and that it would be unjust to permit creditors of a sovereign government to turn claims into interest-bearing investments by omitting to present them—require that there be no interest prior to a demand upon a municipality, but that interest run thereafter only. See Koch v. The County of Schuylkill, supra, Linsky v. County of Luzerne, supra, and Smith v. The Board of Education of the City of New York, supra. The first evidence of a demand here is the bringing of this suit on March 17, 1937, which is approximately the time at which all the companion suits were instituted, and the time at which, by stipulation, we are to regard them for this purpose as having been started. We shall award interest from March 17, 1937, until the date of this finding.

The court finds for plaintiff in the amount of $277.96.

*Opinion sur exceptions*

LEVINTHAL, J., July 1, 1938.—On June 4, 1938, we found for plaintiff in this action in the amount of $277.96, and filed an opinion declaring our reasons for so finding. Plaintiff has filed exceptions.

What we said in our earlier opinion, we would repeat now. In one respect, only, is it now to be taken as modified. We there said that the resolution of the assessors' association of November 25, 1931, was inconclusive and of little materiality. Upon reconsideration, we think that the resolution, although conditional, did show a general intention on the part of plaintiff to "go along" with the city and not to insist upon his strict statutory right to his full salary. The condition attached to the resolution

was later withdrawn by plaintiff when he receipted, without protest or reservation, for the reduced salary as the total amount payable to him. The receipts, therefore, do not stand entirely alone, but are buttressed by the evidence of an intent, originally conditional but later absolute, to make a donation to the city.

Plaintiff's exceptions are hereby dismissed and the finding affirmed.