# City of Wilkes-Barre *v.* F. V. Rockafellow, John Welles Hollenback, Robert E. Mitchell and Isaac Livingston, Appellants.

*Principal and surety—Bond of public officer.*

The sureties on the bond of a public officer are not liable for an extra official act or undertaking of their principal; and if loss result through a departure from the ordinary course of official action at the instance and for the benefit of the party to whom the bond was given, the sureties are not in law or morals responsible for such loss, unless they assented to the action which made the loss possible.

*Principal and surety—Bond of city treasurer—Sinking fund—Treasurer who is also banker.*

Where the commissioners of a sinking fund of a city, in pursuance of their power to invest the money in their hands, lend it to the city treasurer, who is also a banker, to be used by him in his banking business, and the treasurer fails in his business, the sureties on the official bond of the treasurer are not liable for the loss.

Where sureties of a city treasurer are sued for money of the sinking fund lost by their principal in his business as a banker, the defendants may show that such money was actually loaned to the city treasurer by the municipal authorities, without showing what formal action was taken in the matter either by the council or by the sinking fund commissioners before the loaning of the money.

Where the sinking fund commissioners of a city lend funds in their hands to the city treasurer, who is also a banker, to be used by him in his business, and he as such banker pays the interest regularly to himself as city treasurer and finally fails in his banking business, and the principal in his hands with several years interest is lost, the sureties of the treasurer are liable for the interest so received by him as treasurer from himself as a borrower of the city funds.

*Principal and surety—Public officers—Agreement by city treasurer to pay interest on funds in his hands.*

The promise by a candidate for the office of city treasurer to pay interest on the balances of his general account of the city funds that may come into his hands as the price of his election to the office, has no valid consideration to support it, and his sureties are not liable for such interest on money remaining in his hands as treasurer, although he may have charged himself with it in his official account.

Argued April 17, 1895.    Appeal, No. 274, Jan. T., 1895, by defendants, from judgment of C. P. Luzerne Co., May T., 1893,

No. 129, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Reversed.

Assumpsit on the bond of a city treasurer.    Before LYNCH, J.

The facts appear by the charge of the court of common pleas, and the opinion of the Supreme Court.

At the trial defendants offered to show by cross-examination of F. Dietrick, a witness for plaintiff, that he, as clerk of city council, kept the minutes ; that at the meeting of April 4, 1892, while the council was considering the matter of the election of a treasurer, members of council when making nominations made propositions to the council in behalf of certain candidates to pay interest on the moneys of the city that might come into their hands as treasurer ; and D. A. Fell, councilman, submitted such a proposition to the council on behalf of Mr. Rockafellow ; that after these propositions were submitted the council proceeded to the election ; that at the time when witness was writing up the minutes he inquired of a member of council whether he was to put on the minutes the propositions submitted in behalf of the candidates, and that he was instructed not to do so, by reason of which the propositions did not appear upon the minutes.

Objected to as not cross-examination and that the mere statements of councilmen not evidenced by a minute, a resolution or an ordinance are not admissible in evidence against the plaintiff.

The objection was sustained, the offer rejected, exception noted and bill sealed for defendants. [1]

Defendants offered to prove by the witness on the stand that this offer to pay interest was not put on the minutes, and was not put on because witness was ordered not to put it on ; the purpose being to prove that this arrangement or bargain on which the city treasurer took the office was kept a secret, not spread on the public records where it ought to be.

Plaintiff objected that the corporate action of the council can only be evidenced by motion, resolution or ordinance ; and that the minutes themselves are the best evidence of what was done there that night, and the only evidence.

The objection was sustained, evidence rejected, exception noted and bill sealed for defendants. [2]

Defendants offered to show that instead of the city paying Mr. Rockafellow for doing the city business as the law required he agreed with them to take this money on a loan and pay interest on it.

Objected, that whether he was paid a compensation or not has nothing to do with this issue.

The objection was sustained, evidence rejected, exception noted and bill for defendants. [3]

Defendants offered to prove by F. V. Rockafellow that while he had paid interest on the sinking fund during several previous years at the rate of 4 per cent per annum, the year 1892 was the first year he ever paid on the general account, and the first year he had ever been required by the council to do it.

Objected to as irrelevant.

The objection was sustained and a bill sealed for defendants. [4]

Defendants then proposed, in view of the fact that plaintiff had shown by F. V. Rockafellow that he had paid interest on the sinking fund in his hands up to the 31st of March, 1892, to prove by his and other testimony that he borrowed from the sinking fund commissioners of the city of Wilkes-Barre the money in the sinking fund, and agreed with them to pay interest at the rate of 4 per cent; that he paid interest at the rate of 4 per cent for eight years before the 31st of March, 1892, and that the sinking fund commissioners made report annually to the council of their actions, and such report was approved by the council, as shown by their minutes; and they offered in evidence in this connection the ordinances of the city of Wilkes-Barre, sections VII. VIII. IX. X. XI. and XII., relating to taxes, pages 168 and 169, of the Wilkes-Barre City Digest.

This offer was objected to by plaintiff because:

1. That the loan, if any, made by the sinking fund commissioners to the treasurer required the corporate action of council, which could only be evidenced by a resolution or a motion or an ordinance, or something equivalent thereto, and that there was no statement in the offer that such corporate action of the council evidenced as stated will be shown.

2. That neither the sinking fund commissioners nor the council of the city of Wilkes-Barre itself had power to loan any of the moneys of the city of Wilkes-Barre, including the

sinking fund, to the treasurer, or to any other person, in consideration of interest, and more particularly the sinking fund, because under the act of 1874, section XI., it is directed that the moneys of the sinking fund shall be paid into the treasury, and shall be applied to the extinguishment of the bonded debt and the interest thereon, and to no other purpose.

3. That the act, even if formally evidenced, would be ultra vires and against public policy.

4. That the offer did not propose to show that the sinking fund moneys were loaned to the witness upon the stand during the year for which the sureties in the present suit are bound by the bond—during the year for which the bond sued upon was given.

5. That the evidence was immaterial, irrelevant, incompetent, and not pertinent to the issue.

The Court: If it were clear that the sinking fund commissioners had the legal right to loan the sinking fund to the treasurer, the offer in this case, as we view it, does not set forth sufficiently what action was taken, either by the council or the sinking fund commissioners before the loaning of the money. The objection is sustained. Defendants except and bill is sealed. [5]

Defendants offered to prove by F. V. Rockafellow that he paid interest on the sinking fund for the year 1892, and used the fund in his business, including the apparent balance shown by his statement of March 31, 1892, with which the plaintiff was then seeking to charge the defendants.

It was objected to as irrelevant, inadmissible, and not pertinent to the issue.

Defendants' counsel stated that the purpose of the evidence was to relieve the bondsmen in this suit from paying money they were not responsible for, to wit, the balance of sinking fund which was brought over from former year, the moneys of which were not received by Rockafellow during the current year for which they were bondsmen, and being money which he had under his arrangement with the city used up in his business before that time.

The Court: The court is of opinion that, if it were shown that Mr. Rockafellow, the treasurer, used the city money of the sinking fund and paid interest under the circumstances

shown here for the money, it is not evidence and would not relieve the bondsmen of their liability in this action.   Objection sustained, the evidence rejected, exception noted and bill sealed for defendant. [6]

The court charged in part as follows :

This is an action upon a bond for $60,000 given to the city of Wilkes-Barre by F. V. Rockafellow as principal, and the other defendants J. W. Hollenback, R. C. Mitchell and Isaac Livingston as sureties, for the faithful performance of his duty. The condition in the bond is as follows : " The condition of this obligation is such that if the above bounden F. V. Rockafellow, treasurer of the city of Wilkes-Barre, shall faithfully discharge the duties of his said office and pay over and safely deliver into the hands of his successor, all moneys, books, accounts, papers and other things pertaining thereto and belonging to the corporation and the cemetery fund thereof, according to law and the provisions of the city ordinances and regulations, without fraud or further delay."

Mr. Rockafellow was first elected treasurer in 1872 or 1873, and was annually re-elected thereafter until the 4th of April, 1892, when he was again chosen for another year.   He gave the bond in suit, as required by the charter and ordinances of the city, on the 26th of April, 1892, which bond was approved by the president judge of this court on the 27th of the same month.   He was then installed in office and continued to discharge the duties thereof until the 11th day of February, 1893, when he resigned and his resignation was at once accepted by the city.   On the 14th of the same month, Mr. Isaac M. Thomas was elected to fill the vacancy.   Thomas qualified and at once took upon himself the duties of the office.   In obedience to a resolution of the council, Mr. Thomas on the 20th of February, 1893, made demand on Mr. Rockafellow and Mr. Stoddart, assignee, for the benefit of creditors, for the sum of $51,743.91, that being the sum claimed to be due from Mr. Rockafellow to the city.   No money was paid at that time by Rockafellow or by Stoddart.   But on the 2d of January, 1894, the city attorney received from Mr. Stoddart $3,220.54 to apply on account.   The treasurer's statements submitted to the council monthly, taken with other evidence in the case, show that for the fiscal year of 1892, up to the time of his resigna-

tion, he received from all sources, on account of the city, $329,908.51 and paid out during the same period $278,164.60, leaving a balance in his hands to be accounted for of $51,743.91, which he on demand made by his successor in office failed to pay over. The statement for the year ending March 31, 1892, presented to council and received and filed on April 5, 1892, one day after his election, shows a balance in which was included $27,251.12 sinking fund, and $550 interest allowed by Rockafellow and received by the city, said interest evidently being for the use of the balance of the sinking fund in his hands. The auditor's report for that year shows that they found this statement correct and so reported. The next balance struck by Mr. Rockafellow was for April, 1892, which was presented to council and received and filed on the 3d of May, 1892, seven days after the bond had been executed by him and his sureties, and six days after it had been approved by the court. This statement shows the balance of the city fund from all sources, in his hands on the 1st of May, 1892, for the first month of the fiscal year of 1892.

[Judgment by default having been taken against the principal in the bond, the sureties now offer to show—

1. That in April, 1892, when Rockafellow was elected treasurer, it was agreed by the city, without the knowledge or consent of his sureties, that the sinking fund and the general fund in Rockafellow's hands should be loaned to him, for which he agreed to pay the city 3 per cent upon all balances of said fund.

2. That the sum which the city seeks to charge the sureties includes interest so agreed to be paid by Mr. Rockafellow to the city for the use of the sinking and general fund in his hands.

The evidence of the understanding or agreement alleged to have been entered into between Rockafellow and the city council at the time of his election in April, 1892, was admitted for the purpose of getting the facts before the court. I am now clearly of opinion that, in the matter of the agreement here set up as a defense, there is not sufficient proof offered to release the defendants nor to warrant the court in submitting the question to the jury.] [7] [As to the second question raised by the defense, I do not regard the monthly or annual statements of the treasurer's account as conclusive upon the sureties. But it appears from these balances struck by Mr. Rockafellow and

received and acted upon by the council, that the money, whilst in the custody and care of the treasurer, earned the interest. This interest was a part of the balance in the treasurer's hands at the end of the year, 31st of March, 1892, and by his statement filed with council 3d of May, 1892, after his bond had been approved, it was in his custody as treasurer. The money did not belong to the treasurer, but was, according to his written admission, the property of the city. The failure to pay this sum to his successor on proper demand made was as much a violation of his duty as a defalcation for any other part of the city money in his hands.] [8] [It is contended that because the treasurer for several years had the use of the city money in his hands and paid interest therefor, which interest was accepted by the council and used by the city, the money so used was a loan to Rockafellow; that, in other words, the placing of the said funds in Rockafellow's hands was a private business matter between Mr. Rockafellow, treasurer, and the city, with which his sureties had nothing to do. A statement of the case seems to show its fallacy. The charter of the city and the laws prescribe the duty not only of Mr. Rockafellow, treasurer, but of the city council, in regard to this matter. Mr. Rockafellow was elected by the city council as provided by the charter, and gave bond as therein provided. If he used this fund for his own private purpose or loaned it to another, and received interest which he failed to turn over to the city, he and his sureties are liable.] [9] The money did not belong to him; it did belong to the city. He was for that purpose the city's trustee, and is responsible, as much so as he is for the principal sum placed in his hands.

It may be advisable hereafter to set out my reasons more at length. [But the conclusion at which I have arrived is that there is no question to submit to the jury.

I therefore direct the jury to return a verdict for the plaintiff for the full amount of its claim, including interest.] [10]

The court at request of counsel answers the written points submitted, although, as the court understands, it is not the proper practice to answer points when binding instructions are given to the jury.

Defendants' points were as follows:

1. That the plaintiff is not entitled to recover in this case the

sum of $4,731.59, interest included in the balance shown by the statement of Rockafellow's accounts up to March 31, 1892, as being in the sinking fund, which was carried forward into the accounts of 1892.  *Answer:* Refused. [11]

2.  That if the jury believe from the evidence that Rockafellow made a proposition to the city council at a meeting thereof that if they would elect him treasurer he would pay interest on the funds of the city that were in his hands or that he might receive, and that thereupon they did elect him treasurer, and that he did pay interest on the general account of funds in his hands, and that his monthly statements showing such payments were submitted to and approved by the city council, and that Rockafellow's bondsmen were ignorant of the facts stated, the verdict must be for the defendants.  *Answer:* The point is refused.    There is not sufficient evidence to submit to the jury on that question, but, if there were, I would still be inclined to negative the point. [12]

3.  The payment of interest on the general account of moneys in his hands by the treasurer to the city of Wilkes-Barre, during the year covered by the bond in suit, and the report of such interest to the city council, was notice to the city that the money aforesaid was used to earn interest, and whether said moneys were so used by the treasurer, or by any other persons unknown, if the council took no steps to disapprove such use of the money but permitted the same to continue, and accepted for the city the proceeds of the transaction, the bondsmen being ignorant of these facts would be released from liability in this suit.  *Answer:* Refused. [13]

4.  The plaintiff is not entitled to recover the sum of $671.41 included in the plaintiff's claim, being interest payments shown by Rockafellow's certificates of deposit in the year 1892.  *Answer:* Refused. [14]

5.  That under all the evidence the verdict must be for the defendants.  *Answer:* Refused. [15]

Verdict and judgment for plaintiff for $51,876.96.  Defendants appealed.

*Errors assigned* were (1–6) rulings on evidence, quoting the bill of exceptions ; (7–15) above instructions, quoting them.

*S. J. Strauss* and *H. W. Palmer*, *F. W. Wheaton* and *G. R. Bedford* with them, for appellants. — Any course of dealing between the party guaranteed and the principal in a bond entered upon, either before the bond is executed or afterwards, which changes the contract, or the relations, which the sureties suppose themselves to guarantee, relieves the sureties, if they are not parties to the alteration : Telegraph v. Lennig, 139 Pa. 594 ; Bensinger v. Wren, 100 Pa. 500 ; Nesbitt v. Turner, 155 Pa. 429 ; Railton v. Mathews, 10 Clark & Findley, 934 ; Owen v. Homan, 3 Mac. & G. 378 ; Wayne v. Commercial Bank, 52 Pa. 343 ; Franklin Bank v. Cooper, 36 Mc. 179 ; Lancaster Co. Bank v. Albright, 21 Pa. 228 ; 2 Hare & Wallace's Am. Leading Cases, 373, 478 ; Hunter v. U. S., 5 Peters, 185 ; Lafayette v. James, 92 Ind. 240 ; Commissioners of Berks Co. v. Ross, 3 Binney, 520 ; Sharp v. United States, 4 Watts, 21 ; Fertig v. Bucher, 3 Pa. 308 ; Grim v. School Directors, 51 Pa. 219 ; Com. v. Toms, 45 Pa. 408 ; Com. v. West, 1 Rawle, 31 ; Cannell v. Crawford County, 59 Pa. 196 ; U. S. v. Tingey, 5 Peters, 115 ; Smith v. U. S., 2 Wall. 219 ; Pickering v. Day et al., 3 Houston (Del.), 474 ; Guardians of Poor v. Greene, 1 Hurlston & Norman, 884 ; Brandt on Suretyship, 345.

Ultra vires may be a good plea where the corporation either sues or is sued upon the contract itself ; but not always then, since one who has enjoyed the advantage of a contract cannot repudiate it as ultra vires : Oil Creek Co. v. Pa. Trans. Co., 83 Pa. 160 ; 2 Dillon on Municipal Corporations, 936 ; Uhler v. Applegate, 26 Pa. 140 ; 2 White & Tudor, L. Cases in Equity, 1913.

The sinking fund was separated from other city moneys, and under direction of sinking fund commission independently kept at interest from 1881 continuously until the Rockafellow failure. For its loss the treasurer's sureties on the bond in suit were not responsible : Com. v. Reitzel, 9 W. & S. 109 ; Loan Assn. v. Hall Assn., 48 Pa. 446 ; Porter v. Stanley, 47 Me. 515 ; Ohning v. Evansville, 66 Ind. 63.

Money that did not come into the treasurer's custody during the bond year, is not chargeable against the sureties ; placing city money at interest before the bond year, and leaving it so during the year, prevents liability of sureties for it, because this did not then come into his hands : Farrar v. U. S., 5

Peters, 373; U. S. v. Boyd, 15 Peters, 187; U. S. v. Giles, 9 Cr. 212; Com. v. Reitzel, 9 W. & S. 109; Bldg. Assn. v. McMullen, 1 Penny. 431; Loan Co. v. Hall Assn., 48 Pa. 446; Com. v. Baynton, 4 Dallas, 282; Stephen, Law of Evidence, art. XVII.; 1 Greenleaf on Ev. sec. 187.

Under no circumstances can sureties be held for moneys that never came in the treasurer's hands, either before or after the date of the bond.

A right of the commonwealth will not be destroyed by the laches of its agents: Haehnlen v. Com., 13 Pa. 617; U. S. v. Vanzandt, 11 Wheat. 184.

Where the matter complained of by the surety is not a mere lache, but is an independent and positive alteration of the course of official duty, or of the contract which the surety supposes himself to make, whether it is done before the bond is executed or afterwards, it discharges the surety: Smith v. U. S., 2 Wall. 219; State v. Craig, 58 Iowa, 238; State v. McGonigle, 101 Mo. 353; Hagler v. State, 31 Neb. 144; White v. East Saginaw, 43 Mich. 567; Newark v. Dickerson, 45 N. J. L. 38; Pittsburg v. Grier, 22 Pa. 55; Humphreys v. Armstrong, 56 Pa. 204; Norristown v. Moyer, 67 Pa. 355.

Even unauthorized contracts made by its officers when entered into publicly, so as to be within the general knowledge of the corporators, impose liability: Allegheny v. McClurkan, 14 Pa. 81; Bohan v. Avoca, 154 Pa. 404.

*Alexander Farnham, John McGahren* and *William S. McLean* with him, for appellee.—Under the charter, the council alone elects the treasurer, but every power must be exercised by the mayor and council conjointly: Com. v. Crogan, 155 Pa. 448.

It is true that a complied agreement on the part of a municipal corporation may sometimes result from acts of certain of its officers, but in all cases, where such implication will hold, the officers concerned must be acting within the scope of their powers and duties.

Pickering v. Day et al., 3 Houston (Del.), 474, was a case wherein the obligee was an individual taking the bond to himself in his own right. He was therefore capable of concluding himself by his own action.

Where a treasurer of public funds receives interest from the

use or loaning of such funds, such interest will not belong to the officer as the perquisites of his office: Chicago v. Gage, 95 Ill. 596; Doll v. People, 145 Ill. 253.

No laches can be imputed to the city because of the sureties not being informed of the fact that Rockafellow was allowing interest on the funds in his custody: U. S. v. Kirkpatrick, 9 Wheat. 720; U. S. v. Nicholl, 12 Wheat. 509; Com. v. Wolbert, 6 Binn. 292; Com. v. Brice, 22 Pa. 211; Roper v. Trustees of Sagamon Lodge, 91 Ill. 518.

Even had the officers of the sinking fund, or the members of the council outside of corporate action, conspired with Rockafellow to allow him to make illegal use of the money, it would not have relieved the sureties of the liabilities: Taylor v. Bank of Kentucky, 2 J. J. Marshall (Ky.), 564; Ry. Co. v. Shaeffer, 59 Pa. 357.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895 :

This is an action upon an official bond. The principal obligor allowed judgment to go by default. The sureties made defense and raised on the trial some questions that, so far as we have been able to discover, have not been passed upon in the form in which they now appear. It seems that F. V. Rockafellow was elected treasurer of the city of Wilkes-Barre for twenty-one years consecutively. His last election took place in April, 1892, and he gave the bond now sued on soon after. During all this time he was a banker, in good financial standing, doing business in Wilkes-Barre. In February, 1893, his bank suddenly closed its doors. Its liabilities proved to be large and its assets practically nothing. He made a general assignment for the benefit of his creditors, but his assigned estate realized less than seven per cent on his liabilities. His indebtedness to the city as treasurer was ascertained to be $51,743.01. It was made up of four items, viz: the sinking fund of the city, and between four thousand and five thousand dollars of interest thereon; the ordinary or current funds of the city and a considerable sum allowed as interest on the balance due upon this account.

The position of the sureties is that their undertaking is to be responsible for their principal as an officer and not as a banker or borrower; the condition of the official bond being that their

principal, "treasurer of said city of Wilkes-Barre shall faithfully
discharge the duties of his said office and pay over and safely
deliver into the hands of his successor all moneys, books, ac-
counts, papers and other things" belonging to the city which
he shall hold as such officer.   They allege that he held no part
of the $51,743.01, found due from him when his bank closed its
doors, as a city treasurer, but as a borrower, and that the city
has for that reason no claim upon them for any part of its loss.
The position of the city on the other hand is that the entire
amount demanded belonged to the city and was in the hands
of the city treasurer as its lawful custodian.   The assignments
of error all relate to some phase of this general controversy,
and will be sufficiently considered by determining the relation of
F. V. Rockafellow to the four items into which the plaintiff's
demand is divisible.   The general rule is that the liability of
both principal and sureties in an official bond must be measured
by the terms of the instrument.   The terms must receive a
reasonable construction, and if there has been no violation of
official duty there has been no breach of the condition for which
the sureties can be required to account.   It follows necessarily
that for an extra official act or undertaking of the principal the
sureties cannot be held responsible : 2 Am. & Eng. Ency. of
Law, 467*b*.   And if the ordinary course of official action is
departed from for the benefit, and at the instance of the party
to whom the bond is given, and loss results, the sureties are
not in law or morals responsible for such loss unless they as-
sented to the departure from the ordinary course of official
action which made the loss possible : Rogers v. The Marshal,
1 Wall. (68 U. S.) 644; Skinner v. Wilson, 61 Miss. 90.   What
was the official duty of the city treasurer ?   Simply to act as
custodian of the funds belonging to the city.   As to the sink-
ing fund it is clear that he had no power to invest it or use it
in any manner, except under the direction of the sinking fund
commissioners.   They had power under the ordinance to invest
the funds under their control, subject to the approval of the
council, and it was made their duty to report annually the con-
dition of the sinking fund and its securities to the council.   The
eleventh section of the same ordinance provides that "the treas-
urer of the city shall be the custodian of the moneys and secu-
rities of the sinking fund subject to the inspection and order

of said commissioners." As the commissioners had power to invest the sinking fund in such securities as the council should approve, they had of course power to lend it to the person who had the custody of it as an officer. When they did this, the money was no longer in the treasury but the security taken for its return stood in its place.

The treasurer as such held the security. The individual borrower held the money, not as an officer, but as a debtor to the city. The sureties would in that case be liable for the care of the security held by their principal or city treasurer. They would not be liable for the payment of the money borrowed by him from the sinking fund commissioners, because that was a personal debt for the collection of which the creditors would be compelled to look, as in the case of any other loan, to the solvency of the borrower, and the securities given at the time the loan was made. When asked to pay the personal debts of their principal the sureties may well reply, it was the official conduct, not the personal solvency of the treasurer for which we engaged to be responsible. If he has been guilty of a breach of official duty, for that we are liable as sureties upon his official bond, but we have no concern with his personal debts. Now the defendants offered to prove at the trial that Rockafellow borrowed the money in the sinking fund from the sinking fund commissioners at four per cent per annum; that he held it under this arrangement for eight years before the bond sued on was given, and paid the interest regularly at the rate agreed upon. They also offered to prove in connection with this offer that each year the commissioners reported the receipt of the interest from him to the city council, and their reports were approved. The learned judge rejected this offer for the reason that it did not undertake to set forth " what action was taken either by the council or the sinking fund commissioners before the loaning of the money." But if the fact was as alleged that without the knowledge of the sureties their principal had been turned from a mere custodian of public moneys into a borrower of them by the action of the municipal officers, and the money subjected to all the risks of loss incident to its being mingled with the funds of the borrower and used in his private business, the sureties had a right to show it; and if they did show it, then on the commonest principles of justice

they had a right to defend as to so much of the plaintiff's claim. What difference could it make to the sureties whether the proceedings were strictly formal so long as they resulted in the loss of the money, and were taken by those who had a right to invest it.   Suppose the loan had been made to some other person upon whose failure it was lost, and that in the treasury there was found the borrower's note taken by the commissioners.   Would the sureties, if sued, be compelled to show that every step taken by the sinking fund commissioners had been regularly entered on their records and had been in exact compliance with the law, before they could set up the fact that the money had been taken out of the treasury by those who had the right to invest it?   Unless there was some breach of official duty on the part of the treasurer in parting with the money, neither he nor his sureties could be held for its loss because the commissioners had made a bad loan.   If they had the power to make the loan and did make it they took the money out of the treasury for investment, and the treasurer no longer held it as the custodian.   This offer should have been received. Whether the evidence would have supported it we cannot determine, but the defendants had a right to make the showing offered, if it was in their power.   It was in effect an offer to show that the sinking fund had been invested and had not been in the treasury for more than eight years.   The sinking fund commissioners might be liable to the city for a loss resulting from their neglect of duty, but the defendants are not their sureties and have no concern with that question.

The interest on the sinking fund stands on quite different ground.   If Rockafellow as a banker had borrowed of the sinking fund commissioners the money which Rockafellow as city treasurer had in his custody, and had paid interest on it regularly as alleged, for eight years, the interest having been paid by him as borrower to himself as city treasurer, was as to himself and his sureties in the treasury.   For this he was liable to account.   His failure to pay it over to his successor was a breach of his official duty and for such breach of official duty his sureties were liable on their bond.   They were liable not because it was interest due from him to the city, but because it was interest received by him as city treasurer from a borrower from the sinking fund commissioners.   It was income

derived by the commissioners from an investment of the sinking fund money, paid to the treasurer as the proper receiving officer and custodian of all uninvested money belonging to the city. If the money was not in fact lent to Rockafellow then he was not liable to interest, for as city treasurer his duty was to hold the money subject to the orders of the proper officers, and he had no right to use it. His duty was simply to pay over, when legally required so to do, what he had received by virtue of his office, and for the discharge of this official duty his sureties were liable. When this duty was discharged their liability was at an end. Either he held the sinking fund as treasurer or he had borrowed it as a banker. The rejected evidence, if it had sustained the offer, would have settled this question and the extent of the liability of the defendants as to this part of the plaintiff's claim.

The remaining question relates to the general funds of the city and the effect of the agreement by Rockafellow to pay interest at the rate of three per cent on balances in favor of the city. It does not appear that there was, as to this money, any agreement entered into. Some member of the city counsel in naming another candidate stated that the person named by him would if elected city treasurer pay interest at the rate of three per cent on the balance in favor of the city. Another member said if Mr. Rockafellow was re-elected he would do as well by the city as any one else. The election then took place and resulted in the choice of Mr. Rockafellow by a decided majority. The relation of borrower and lender was not created by these statements. It does not seem to have been contemplated. The balance would be constantly shifting in amount. The treasurer was to be prepared at all times to honor the warrants of the proper officers. And upon the surplus of receipts over disbursements, as balances were struck from time to time, interest was to be allowed. This agreement if made did not amount to a loan of any particular sum of money by the city council to the treasurer, but was in the nature of a premium demanded from him as the price of the office. It was a premium for which he was not liable, which he could not be compelled to pay if he had taken defense to it, and for which the sureties are not liable.

The agreement, if made, was against public policy, and is

incapable of enforcement. If, as we incline to think, he was not a borrower of the money of the city, but was to hold the money subject at all times to the call of the proper municipal officers, his duty, and his sureties undertaking on his behalf are discharged by the payment of the amount of money that came into his hands as treasurer regardless of any promise to pay interest or a premium in any other form for the privilege of holding the office. The promise to pay interest as the price of an election to the office of treasurer has no valid consideration to support it. It is a promise that we cannot recognize as binding on him who made it; a fortiori is it without binding effect on the sureties upon an official bond. It is contended that as the law requires the city treasurer to keep accounts of his receipts and disbursements of the revenues of the city and to make at stated intervals transcripts of these accounts for the information of the municipal government, the transcripts so made should be held to be conclusive upon him and his sureties as to the amount of public moneys received by him. This is putting the effect of the entries by the treasurer upon his books too strongly. They should be held to make a case, prima facie, against him and those who are in privity with him. They cannot however preclude the defendants from showing that the items, or some of them, have been erroneously entered; that their principal was mistaken in his view of his own liability, or was disposed, unfairly, to make them responsible for sums of money for which no recovery could otherwise be had against them. Their liability is limited, as we have seen, by the terms of the bond to a breach of official duty. If it was not the duty of the treasurer to pay, as such, the price demanded from him as the consideration of his appointment, his failure to pay it was not a breach of official duty and, therefore, not a breach of his official bond. By the simple device of charging himself with that for which he was not liable he could not shut the mouths of his sureties or estop them from alleging the truth in their own behalf. The interest, whether it be treated as an exaction the law does not authorize, or a price demanded for the office, must be struck out so far as it relates to the general funds of the city. So far as the facts now appear we see no reason why the sureties should not be held liable for the general funds of the city. This disposes of the questions raised

WILKES–BARRE *v.* ROCKAFELLOW, et al., Appellants. 193
1895.]      Opinion of the Court—Dissenting Opinion.

on this record. The assignments of error are sustained so far as they relate to the questions now considered, the judgment is reversed, and a writ of venire facias de novo awarded.

MITCHELL, J., dissents from so much of this opinion as holds that plaintiff cannot recover interest on balances of general account.