## Town of Nortonville v. Woodward.

(Decided May 31, 1921.)

### Appeal from Hopkins Circuit Court.

1. Municipal Corporations—Vacancy in Office of Marshal.—The council of a town of the sixth class may fill by appointment a vacancy in the office of marshal.

í   Municipal Corporations—Election by Council of Marshal.—Even though the members of the council select the marshal by secret ballot, it is not an election within the meaning of section 147 of our Constitution requiring all elections by persons in a representative capacity to be by a viva voce vote.

.   Municipal Corporations—Officers—Compensation—Agreement as to.—An agreement made between city officials and one about to be elected to fill a vacancy in the office of marshal that such person would accept the office and perform all the duty appertaining thereto for a salary less than that fixed by ordinance is unenforcible.

4. Municipal Corporations—Records.—A city can speak only through its records and oral evidence of an agreement made by members of a city council is incompetent to prove an agreement made between such city officials and one about to be elected to fill a vacancy in the office of marshal concerning the salary to be received by such marshal.

J. A. JONSON for appellant.

LETCHER R. FOX and LAFFOON & WADDILL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellant, Town of Nortonville, is and was at all the times herein mentioned a town of the sixth class. In January, 1910, there was a vacancy in the office of marshal of the said town and the new city council on coming into office undertook on January 3rd to fill it by appointing or electing appellee, S. L. Woodward, to said office. Its first regular meeting on the night of Monday, January 3rd, was for the purpose of organization and election of a chairman and other officials of the board, and a marshal. By statute such meetings are fixed on the first Monday in January. The following is a copy of the minutes of that meeting:

"First call meeting of the new board of trustees of Nortonville, Ky., January 3rd, 1910.

"Purpose of meeting was to qualify as councilmen for town and to elect chairman, marshal, clerk and treasurer for same.

"All the board members for 1910 were present and were qualified by Judge J. R. Harrison as councilmen for town.

"House was now declared ready for applications for marshal. Mr. S. L. Woodward and Mr. T. W. Wiggins made. After hearing applications heard by the clerk a ballot was made and a vote taken by secret ballot and counted by the chairman and clerk, which showed two votes for S. L. Woodward and two votes for T. W. Wiggins. Chairman J. W. Gatlin cast his vote for S. L. Woodward, which untied the vote and elected S. L. Woodward marshal for the town of Nortonville, Ky.

"Motion duly made and seconded to adjourn to meet January 5th, 1910, for further business.

"J. W. GATLIN, Chm.

"C. M. OATES, Clerk."

Although the minutes of the meeting denominate it the "first call meeting" it was in fact the regular meeting of the board of council, and of this fact the court takes judicial notice. At such meeting the council had the right to fill a vacancy in the office of marshal. This was an appointment, not an election, within the meaning of our Constitution and statutes, and the more fact that members of the council in ascertaining the choice of that body for marshal took a secret ballot did not in any way invalidate the appointment of Woodward.

That part of our Constitution reading: "In all elections by persons in a representative capacity, the voting shall be *viva voce* and made a matter of record," has no application to the facts of this case, because the marshal was not elected in the constitutional sense, but only appointed, the statute so designating the act of filling such vacancy.

Another meeting of the council was held on January 5th, but as Woodward was not ready to execute bond it was adjourned until the 18th, at which time the council again met and the marshal's bond was executed and approved by the council. At this meeting the minutes of the regular meeting were read and approved.

Woodward insists that when he was installed as marshal on the 18th of January, the date of the execution and approval of the bond, he was a *de jure,* not a *de facto* officer, and entitled to the regular fixed compensation and emoluments of the office.

The city insists that it entered into a verbal agreement and contract with Woodward before his election by which he was to accept the office of marshal and perform all the duties thereof for a salary of $25.00 per month and the fees and a per cent of the taxes, and to prove this it called several of its ex-officials who participated in the election of Woodward, as witnesses, and also introduced a number of reports and claims made out by Woodward against the city in which his salary was fixed at $25.00 for a part of the time, at $35.00 for a part of the time, and at $45.00 for the balance of the time.

This litigation was commenced in 1917 by Woodward against the city to recover $1,548.00 with interest alleged by him to be the balance due on his salary and fees while marshal, on the basis that the regular fixed salary of marshal was $50.00 per month during his incumbency. His contention is that the city was financially unable at the time the services were performed to pay him his full salary and that he agreed to accept a less sum on account until the city became able to pay in full. He served as marshal from January, 1910, until September, 1916, and resigned before bringing this suit. The city defends on the theory that Woodward agreed before his election to accept $25.00 per month as salary instead of $50.00, as fixed by ordinance, and that he was paid said sum as it came due until the city council volun-

tarily raised it to $35.00 per month, after which time he received that sum until again raised to $45.00 per month; that he has received in full all salary and fees due him according to the contract, and is estopped by his conduct to claim the full salary fixed by the ordinance. It also insists that the attempted election of Woodward by the city council by secret ballot was invalid, and that he was never more than a *de facto* marshal and not, therefore, entitled to recover any salary, but can only retain that heretofore paid him. If he was merely a *de facto* officer this contention must be sustained.

Before his election the city council, by ordinance regularly enacted, fixed the salary of the marshal at $50.00 per month, and this ordinance had not been repealed, amended or changed from its passage in 1909 up to the time of this litigation, unless the change was effected by the following minute made March 21, 1911, and found in the records of the city council:

"Regular meeting board of trustees town of Nortonville, Ky., March 21, 1911.

"Order called by chairman, J. W. Gatlin. Roll call by clerk, J. W. Gatlin, pres.; W. E. Laffoon, pres.; L. P. Payne, pres.; C. M. Stephens, pres.; J. N. Oates, absent.

"Regular move and seconded by all voting aye that board allow Marshal Woodward a $10.00 raise on the month, making his salary $35.00 per month.

"Regular move and seconded to adjourn to meet call of chairman.

"J. W. Gatlin, *Chm.*

"C. M. Oates, *Clerk.*"

No other order or ordinance was made or passed by the council affecting the marshal's salary.

It will be observed that this minute has no enacting clause. It cannot therefore be a valid ordinance. Bates v. City of Monticello, 173 Ky. 244; Kentucky Statutes, section 3700. Had it been a valid ordinance it could have only affected the salary of Woodward after his qualification under his subsequent election by the people, and not for the term which he was serving at the time of the passage of the same.

It is a general rule that an agreement by an officer to accept less than the fixed salary of an office to which he is elected or appointed for his compensation is void as against public policy. Mechem on Public Officers, sec. 377; 29 Cyc. 1426; 134 A. S. R. 422; 22 R. C. L. 538.

It would, therefore, appear that if it be conceded that Woodward actually agreed, as contended by the city, to serve as marshal for $25.00 per month when the salary was fixed by ordinance at $50.00 he was not bound thereby, the agreement being against public policy and void.

Moreover, there was no competent evidence offered by the city to prove such an agreement. A city can only speak through its records, and there was no record of the city reciting that it had entered into such an agreement. Oral testimony of an official as to what action the city council has taken on a given subject is inadmissible. The records alone are competent evidence of such facts.

It becomes wholly unnecessary for us to determine what the status of the parties would be if the city council had passed a valid ordinance fixing the marshal's salary at a different sum. It cannot be doubted, however, that the law-making body of the city could, before the election of Woodward, have passed an ordinance fixing his salary at a less sum. It had the means of protecting the city but failed to exercise them.

It follows from what has been said that Woodward was entitled to recover the full salary of marshal as provided by the city ordinance at the time of his election subject to the sums theretofore paid him, and the trial court did not err in so holding.

Judgment affirmed.