## Taylor *v.* Philadelphia, Appellant.

Argued October 22, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel Feldman,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellant.

*Clarence G. Myers,* with him *Duane, Morris & Heckscher,* for appellee.

OPINION BY KELLER, P. J., March 10, 1937:

The Personal Registration Act of July 10, 1919, P. L. 857, 25 PS sections 361 to 421, applicable to cities of the first class, provides for the appointment by the Governor of five registration commissioners for a term of four years, each of whom is to receive a salary of four thousand dollars per annum, payable monthly by the treasurer of the city upon presentation of proper warrants signed by the chairman or chief clerk of the commission. Section 45 of the Act, 25 PS 344, directs the city council to appropriate annually, and from time to time, the funds necessary for the maintenance and operation of the commission, including the pay-

ment of the registrars, the commissioners, and their clerks, counsel, etc., and to provide the commissioners with suitable and adequate rooms and furniture for keeping their records and performing their duties. Section 46 of the Act, 25 PS 442, imposes on the *county commissioners* the duty to see that the polling places are open and in proper order for the use of registrars on each day when they are required to be in session in the various election districts, and to provide for the payment of all rentals for the same. Registration Commissioners are not, strictly speaking, city officers. They are public officers (*Com. v. Moore,* 266 Pa. 100, 109 A. 611) created by the General Assembly, with the purpose in view of securing honest elections in cities. City Council has nothing to do with their appointment, the discharge of their duties or their removal from office. It can neither increase nor diminish their compensation. Any attempt to do so would be illegal and void. Its only duties are to appropriate the money necessary for the maintenance and operation of the commission and to furnish suitable and adequate accommodations for the performance of their duties.

Governor Pinchot appointed five registration commissioners, among them the plaintiff, C. Burgess Taylor. He served from July 11, 1931 to February 7, 1935, when he was removed from office by Governor Earle. He brought this action against the City of Philadelphia to recover the difference between his compensation as fixed by the Act of 1919, supra, and the total of the amounts paid him monthly by the city during the two year period from January 1, 1932 to December 31, 1933. The city has appealed from the judgment entered in his favor, upon the verdict of a jury.

The facts on which the city relies to reverse this judgment are as follows:

On December 31, 1931 city council enacted an ordinance for the adoption of a financial program for the

city for the year 1932, section 18 of which appropriated to the Registration Commission aforesaid the sum of $320,710, of which sum, item A-1 included an appropriation of $4000 for each of the five registration commissioners. Section 31 of this ordinance provided "that all per diem and other employes of the city, county or other departments paid by appropriation from this financial program for the year 1932 ...... receiving more than $1200 per annum, shall be decreased in wages or salary in the sum of ten per centum, to be apportioned in an amount in each pay so that the said per diem or other employe shall not receive in the aggregate during the year 1932 more than ninety per cent of the basic wage or salary hereinbefore specified; and the City Controller is hereby directed not to countersign any warrant in excess of the amounts provided by this section." We may here note that the plaintiff was not a "per diem or other employe of the city, county or other department" referred to in the ordinance. He was a public officer, whose salary or compensation could not be lessened or diminished by City Council. The ordinance was without legal effect on the plaintiff's salary as fixed by Act of Assembly.

On January 16, 1933 City Council enacted a like ordinance for the year 1933, section 18 of which appropriated to the Registration Commission aforesaid the sum of $224,946, of which sum, item A-1 included an appropriation of $4000 for each of the five registration commissioners. Section 31 of this ordinance provided, "that employes of the City, County, or other departments or agencies paid by appropriation from this financial program for the year 1933, shall be decreased in salary, wages, or other compensation in the following manner: Those receiving compensation on per annum or monthly basis shall receive an exemption of Six Hundred ($600.00) Dollars per annum on the basic rate of salary, and from the remainder thereof a twenty-

three per centum reduction shall be made, to be apportioned in an equal amount in each pay ...... The City Controller is hereby directed not to countersign any warrant in excess of the amounts provided by this Section." Again we may note that the plaintiff was not an employe affected by this ordinance. He was a public officer whose salary or compensation, fixed by Act of Assembly, could not be diminished by city council.

Nevertheless in making up the registration commission payroll sheets for the salaries payable to the registration commissioners the city officials attempted to deduct ten per centum in 1932 and twenty-three per centum in 1933, and the city controller countersigned, and the city treasurer paid, vouchers, not for the full monthly salary due the registration commissioners but only for that amount less the deduction ordained by city council as respects *employes* of the city, county, etc. The method of payment used may be summarized as follows: Vouchers were not drawn for each commissioner, but one voucher for all five commissioners was drawn in favor of the chief clerk or some other employe of the commission to whom a signed power of attorney to receive the same had been given by the Commissioners, which remained on file in the city controller's office. Every month two payrolls were prepared, one for the city controller's office, and one for the office of the registration commissioners. The city solicitor contends that the original was filed in the office of the registration commissioners and the copy in the city controller's office. Plaintiff's counsel asserts just the opposite. We think they were both originals, with a few slight differences, but the fully executed one remained in the city controller's office.

The payroll sheets are fourteen inches wide by seventeen inches long. The pay roll for January 1932 filed in the city controller's office (Record 120a) is here

printed, as well as can be done in a page this size, all the pages constituting one sheet.

PAY ROLL

REGISTRATION COMMISSION

City of Philadelphia

Signed Power of Attorney for January—on file in the City Controller's office.

For Salaries of Registration Commission
Period from January 1, 1932 to January 31, 1932.

| Appropriation Item No. | Name of Employee | Appointment Title | Time worked | Basic Rate of Pay |
|---|---|---|---|---|
| A-1 | James L. Shields | Commissioner | one month | $4000 |
| | Thomas E. McDermott | " | " | 4000 |
| | Margaretta M. Scott | " | " | 4000 |
| | C. Burgess Taylor | " | " | 4000 |
| | Romain C. Hassrick | " | " | 4000 |

| Monthly rate | 10 per cent reduction | Amount earned | Pension Fund | Amount payable | We the undersigned hereby authorize and empower Michael F. McCullen or James Loughran to collect from the City Controller the amount stated opposite our names on this Pay Roll and to pay unto the Board of Pensions the sum due thereto as set forth herein. |
|---|---|---|---|---|---|
| 333.33 | 33.33 | 300.00 | 4.00 | 296.00 | James L. Shields |
| 333.33 | 33.33 | 300.00 | 4.00 | 296.00 | Thomas E. McDermott |
| 333.33 | 33.33 | 300.00 | 4.00 | 296.00 | Margaretta M. Scott |
| 333.33 | 33.33 | 300.00 | 4.00 | 296.00 | C. Burgess Taylor |
| 333.33 | 33.33 | 300.00 | 4.00 | 296.00 | Romain C. Hassrick |
| 1666.65 | 166.65 | 1500.00 | 20.00 | 1480.00 | |

Warrant No. 3—Michael F. McCullen B. E. 1480.00
Warrant No. 4—Pension Fund 20.00

$1500.00

[Typewritten on Pay Roll]

We, the above named Registration Commissioners in and for the City of Philadelphia, in signing this Payroll for our salaries for the month of January, 1932, call attention to the action of City Council, Philadelphia, in deducting the above named percentage from the salaries of said Commissioners as fixed by Act of Assembly approved July 10, 1919 (P. L. 857) as being in violation of the legal rights of the Commission, and sign this Payroll without prejudice and reserve our rights under said Act of Assembly to hereafter collect all balances of salary due us if we so desire.

If any reduced amount is accepted by the respective Commissioners, it must be as a voluntary act of the Commissioners and shall not constitute a waiver of the right to claim the full amount of salary as fixed by the Act of Assembly aforesaid.

James L. Shields

Thomas E. McDermott

C. Burgess Taylor

Margaretta M. Scott

Romain C. Hassrick

City and County of

Philadelphia, ss:

Michael F. McCullen being duly sworn, deposes and says the above salary roll, to the best of his belief, is correct, and that the services were performed by the persons named therein; that they are citizens of the United States and such of them as are required by law were bona fide residents of the City of Philadelphia at least one year prior to their appointment, and are now bona fide residents of the said city.

Michael F. McCullen

Chief Clerk Registration Commissioners

Sworn or affirmed and subscribed to before me this

Feb. 13, 1932

Jno. E. Tripple

for City Controller

Correct

Michael F. McCullen

Chief Clerk for Registration Commissioners

Approved

James L. Shields

Chairman Registration Commission

204

ENDORSED

Warrants
Nos. 3 and 4.

Pay Roll Voucher

Registration Commission

City of Philadelphia

Period from January 1, 1932 to January 31, 1932

Date of appropriation December 31, 1931.

| Appropriation Chargeable | | Pension fund | Net Amount | If payable from Loan Funds Place Loan stamp here. |
|---|---|---|---|---|
| Item No. | Amount | | | |
| A-1 | 1500.00 | 20.00 | 1480.00 | |

| Totals | 1500.00 | 20.00 | 1480.00 | |
|---|---|---|---|---|
| Expense Administration | | $1500.00 | | |
| Total | | $1500.00 | | |

February 13, 1932

Received from WillB Hadley, City
Controller, Warrants Nos. 3 and 4 for
$1500.00 Duly Countersigned.

Michael F. McCullen

The payroll sheet which remained on file in the regis-
tration commissioners office (Record 122a) is exactly
like the foregoing except that the sub-heading under
which the commissioners signed their names, reads:
"We, the undersigned, hereby acknowledge receipt from
Michael F. McCullen or James Loughran of the respec-
tive sums set opposite our names in the column 'Total
amount payable,' the same being for services during
the period stated upon this Pay Roll." Besides, on this
payroll, the affidavit is not signed by the chief clerk,
nor sworn to before the controller or his deputy. It is

not signed by Michael F. McCullen after the word 'Correct,' nor by James L. Shields after the word 'Approved,' and the endorsement showing the receipt of the vouchers by Michael F. McCullen from WillB Hadley, City Controller, does not appear.

Two things will be noted: First, that nowhere did the registration commissioners—including this plaintiff—declare or acknowledge that the money paid them was *in full* for their services for the month; and secondly, on the contrary, by a notation prominently typewritten on the face of the payroll, signed by the registration commissioners, supra, they distinctly disavowed the right of the city council to deduct any percentage from their salaries as fixed by the Act of July 10, 1919, P. L. 857, and averred that the same was in violation of their legal rights, and expressly declared that they signed the pay roll without prejudice and reserved their rights under said Act of Assembly to thereafter collect all balances of salary due them if they so desired. They gave distinct and unequivocal notice that "If any reduced amount is accepted by the respective commissioners, it must be as a voluntary act of the commissioners and shall not constitute a waiver of the right to claim the full amount of salary as fixed by the Act of Assembly aforesaid."

The typewritten notice or memorandum of dissent or disavowal, signed by the registration commissioners, which appeared on the payrolls in 1933 was the same as in 1932, except that the last paragraph read: "Any reduced amount accepted by the respective Commissioners shall not constitute a waiver of their rights to claim the full amount of salary as fixed by the Act of Assembly aforesaid."

The appellant contends (1) that the acceptance by the plaintiff, for two years, of his monthly stipend, less the percentage deducted pursuant to ordinance of city council, constituted a waiver of his right to de-

mand full payment of the salary belonging to his office, because (a) he took no legal steps to compel the city authorities to pay him his full salary and (b) because the note or memorandum on the payroll, disavowing and dissenting from the attempted reduction of his salary by city council, was filed with the city controller and not specially brought to the notice of city council; and (2) that plaintiff's act of signing the monthly payroll in the form prepared constituted a release under the provisions of the Act of May 13, 1927, P. L. 985, 33 PS 6. There is no merit in either contention.

There is some difference of opinion in other jurisdictions as to whether the mere acceptance by a *public officer* of less than the salary fixed by *statute* as belonging to his office constitutes a waiver of his right to demand payment of the full amount of his salary or estops him from recovering the balance unpaid. The weight of authority, in our opinion, is that it does not.[1]

---

[1] *Werner v. Hillman Coal & Coke Co.,* 300 Pa. 256, 150 A. 471 (1930); *Ohio National Bank v. Hopkins,* 8 App. D. C. 146 (1896); *Settle v. Sterling,* 1 Idaho 259 (1869); *Galpin v. Chicago,* 269 Ill. 27, 109 N. E. 713, 718-9 (1915); *Pitsch v. Continental & Commercial Natl. Bank,* 305 Ill. 265, 137 N. E. 198 (1922); *Bodenhofer v. Hogan,* 142 Iowa 321, 120 N. W. 659 (1909); *Peterson v. City of Parsons,* 139 Kans. 701, 33 P. (2d) 715 (1934); *Town of Nortonville v. Woodward,* 191 Ky. 730, 231 S. W. 224 (1921); *Winchester v. Azbill,* 225 Ky. 389, 9 S. W. (2d) 51 (1928); *Mack v. City of Mayfield,* 239 Ky. 420, 39 S. W. (2d) 679 (1931); *City of Louisville v. Thomas,* 257 Ky. 540, 78 S. W. (2d) 767 (1935); *Gallaher v. Lincoln,* 63 Neb. 339, 88 N. W. 505 (1901); *Abbott v. Hayes County,* 78 Neb. 729, 111 N. W. 780 (1907); *Bishop v. City of Omaha,* 130 Neb. 162, 264 N. W. 447 (1936); *People ex rel. Satterlee v. Board of Police,* 75 N. Y. 38 (1878); *Kehn v. State of New York,* 93 N. Y. 291; *Grant v. Rochester,* 79 App. Div. 460, 80 N. Y. Supp. 522 (1903), affirmed without opinion in 175 N. Y. 473, 67 N. E. 1083 (1903); *Moore v. Board of Education,* 121 App. Div. 862, 106 N. Y. Supp. 983 (1907), affirmed without opinion in 195 N. Y. 614, 89 N. E. 1105 (1909); *Pitt v. Board of Education,* 216 N. Y. 304, 110 N. E. 612 (1915); *Pederson v. City of Portland,* 144 Ore. 437, 24

We are not dealing here, and therefore are not now concerned, with cases involving *city employes* whose compensation is fixed by city ordinance and subject to reduction by the city government, or who may be discharged or removed at the will of the city authorities (*Wagoner v. Phila.*, 215 Pa. 379, 64 A. 557). Nor will the facts in this case permit us to apply the principles which governed in *Ryan v. City of New York*, 117 N. Y. 271, 69 N. E. 599—and the cases following it relied upon by the appellant—where a laborer engaged to work on city streets, employed by the day at a per diem rate of $3, continued to work and accept pay at that rate without protest or complaint for six years after the legislature passed an act that the wages of laborers on public works should not be less than the prevailing rates for a day's work in the locality where the public work was performed—which it was averred was $3.50 instead of $3.00—; for the act did not fix a definite wage or rate of compensation, and it did not apply to public officers. As to the latter, see contra, *Grant v. City of Rochester*, 80 N. Y. Supp. 522, affirmed 67 N. E. 1083; *Moore v. Board of Education*, 106 N. Y. Supp. 983, affirmed 89 N. E. 1105; *McGrade v. City of New York*, 110 N. Y. Supp. 517; *Golding v. City of New York*, 140 N. Y. Supp. 1020.

The case, likewise, differs on its facts from cases dealing with offers or agreements by *candidates* for public office to donate part of their salary or compensation or accept less than the compensation or fees fixed by law, or to pay interest on funds received, which are held void and unenforceable as against public policy. See *Pittsburgh v. Goshorn*, 230 Pa. 212, 79 A. 505;

P. (2d) 1031 (1933); *State ex rel. Kercheval v. Nashville*, 83 Tenn. (15 Lea) 697, 54 Am. Rep. 427 (1885); *Rhodes v. Tacoma*, 97 Wash. 341, 166 P. 647 (1917); *Rettinghouse v. Ashland*, 106 Wis. 595, 82 N. W. 555 (1900); *Schuh v. City of Waukesha*, 220 Wis. 600, 265 N. W. 699 (1936).

*Shields v. Latrobe-Connellsville Coal & Coke Co.,* 239 Pa. 233, 86 A. 784; *Wilkes-Barre v. Rockafellow,* 171 Pa. 177, 192, 33 A. 269; *Werner v. Hillman Coal & Coke Co.,* 300 Pa. 256, 150 A. 471; *Bodenhofer v. Hogan* 142 Iowa 321, 120 N. W. 659; *The State v. Mayor of Nashville,* 83 Tenn. (15 Lea) 697, 707. See 22 R. C. L. Public Officers, secs. 234, 235, pp. 537, 538. It also differs from *McConaghy v. Phila.,* 302 Pa. 142, 153 A. 334, (a case which resembles *Ryan v. City of New York,* supra), where a city failed to classify its firemen and limit their hours of work, as required by Act of May 16, 1923, P. L. 235, and a fireman continued to perform his duties as he had done before the passage of the act and accepted his pay, without complaint or demand for extra pay for working longer than the statutory hours, it was held that his administratrix, after his death, could not recover extra pay for the overtime above the hours fixed by statute. Nor is it at all similar to *Taskey v. Pittsburgh,* 123 Pa. Superior Ct. 573, 187 A. 292, where a city, which had power to suspend patrolmen, without pay, for periods not exceeding thirty days, in order to avoid the necessity of dismissing a number of patrolmen because of a shortage of funds, ordered all of them to be placed on furlough, without pay, for certain days in certain months, and a patrolman who chose to work on the furlough days, although he was not obliged to do so, understanding fully that he would receive no compensation for such work, and who signed the payroll receipts for the days for which he was furloughed, and although not paid for those days, *acknowledged receipt of his wages in full,* and signed a statement that he was contributing such services to the city during the existing emergency, was not allowed, two years after he was placed on the retired list, to recover compensation for the furloughed days.

This case also differs from *Hobbs v. City of Yonkers,*

102 N. Y. 13, 5 N. E. 778, relied on by appellant, in that there the plaintiff, the city treasurer, had not only signed a paper agreeing to pay the city all fees in excess of $2000 per annum, but he, also, had made yearly settlements with the city on that basis, and at the close of his term he rendered his final account, crediting himself with compensation at the rate of $2000 per annum, and turned over to his successor, as the money of the city, all in excess of that amount. The charter of the city was amended during his term of office so as to authorize council to fix the compensation of the treasurer at a sum not exceeding $2000, but as that was all he was getting, no action was taken by council thereunder and no new appointment was made. It was held that the accounts and settlements above referred to were an effectual bar to the recovery of the balance of his fees. And in *Chandler v. Town of Johnson City*, 105 Tenn. 633, 59 S. W. 142, the plaintiff was paid the salary fixed by ordinance at the time he accepted the office of recorder and was qualified to act as such.

We know of no public policy of this Commonwealth, which prevents a municipal or state officer, in times of great public distress, from voluntarily donating to his city, county or state such part of his salary or emoluments of office as he sees fit to give up for the relief of the municipality or state. While his salary may not be diminished during his term of office, he can do what he will with his own, and if he chooses to devote part of it to the relief of the city or state, and the latter accepts his voluntary donation, no public policy forbids it. *Schuh v. City of Waukesha*, 220 Wis. 600, 265 N. W. 699 (1936). The transaction is most clearly exhibited by the municipality or state paying the officer his full salary and the latter then paying back by check, so much thereof as he chooses to devote to the relief of city or state. But that is not the only way of accomplishing the desired result, and any form may be

adopted which carries out the intention of the parties, provided it is established to be the voluntary act of the officer, and clearly and definitely proved to be such, and is to continue only so long as he wishes. No *contract* relative to the execution or continuance of such a gift or donation can be enforced. It must be wholly voluntary and remain so. It does not arise by waiver or estoppel. In the present case, appellant's counsel wholly misunderstands the situation. The City had no power to reduce the appellee's salary or to deduct any percentage from it. The city ordinances referred to did not apply to him, for he was not an employee of the city; but even if they had referred to public officers, the ordinances would have been powerless to affect appellee. City Council was bound to know this when it passed the ordinances. If plaintiff saw fit voluntarily to donate part of his salary to the relief of the city he could do so, but it must be his own individual, voluntary act and it must be clearly and unequivocally established to be such. The mere receipt of part of what he was legally entitled to, without more, was not enough to establish his voluntary acceptance of the part for the whole, especially so, where as here, it was not received as in full payment (differing from *De Boest v. Gambell*, 35 Ore. 368, 58 P. 72, 75 and 353, cited by appellant) but, on the contrary, the appellee disavowed and dissented from the right of the city to make the reduction. The appellee was not bound to express his dissent and disavowal to the city, in order to make the latter's action ineffective. The shoe was on the other foot. The city in order to escape paying the plaintiff his full salary was required to show some clear and unequivocal act by him evidencing his voluntary donation of the unpaid part of it to the city. But, in this case, the plaintiff did more than he was required to do. He expressed unequivocally his disavowal of and dissent from the city's attempted reduction; and he

expressed it just where he should have done, on the payroll which went to and was retained by the city's fiscal officer. No notice was *required* of him to anyone, until he voluntarily accepted the reduction, but if any was to be given, it was properly given to the city's fiscal representative, who countersigned and approved the vouchers for payment. He was the officer designated in the ordinances to carry them into effect. Cases cited by the appellant to the effect that one dealing with an agent must be sure of the agent's authority to enter into the proposed contract, have no application. The plaintiff was not contracting with any agent of the city. He was disavowing an act which the city was illegally attempting to put through; and it was entirely proper to enter that protest or disavowal on the very payroll sheet which the city now presents as constituting the basis for his alleged waiver or estoppel. See *Phila. County v. Sheehan,* 263 Pa. 449, 457, 458, 107 A. 14. Nor was plaintiff obliged to bring mandamus proceedings to compel the city officials to pay him. It was not done in *Graham v. Philadelphia,* 288 Pa. 152, 135 A. 908, under somewhat similar circumstances. The debt being clear, it could be enforced by action in assumpsit.

The Act of May 13, 1927, P. L. 985, 33 PS 6, which provides (italics supplied) : "that a written release or promise, hereafter made and signed by the person releasing or promising shall not be invalid or unenforceable for lack of consideration, if the writing also contains an *additional express statement,* in any form of language, *that the signer intends to be legally bound,"* has nothing to do with the case. The purpose of this act, as declared by Professor Williston, who drafted it, was to make the law "substantially the same as it was when seals were in force, so far as the doctrine of consideration is concerned, except that in lieu of the formality of a seal, *the formality of this statement is*

*substituted"* (italics supplied). See Selected Readings on the Law of Contracts, pp. 608-614 and 614-618, articles by Sherman Steele, 21 Illinois Law Review 185 and William Foster Reeve III, 76 University of Pennsylvania Law Review, 580. The statement *that the signer intends to be legally bound,* in order to take the place of a seal, in a release or contract, as respects *consideration,* must be an additional *express statement,* to the effect that the *signer intends to be legally bound.* It is never to be *inferred* from circumstances. No such statement appears on these payrolls and even if the signatures had been followed by a seal, or there had been an express statement that the signers intended to be legally bound, it would not have changed a simple receipt for part of what the signers were entitled to receive into an acceptance of it in full for the whole. The typewritten memorandum or note placed on the payroll sheets, disavowing any such effect, and signed by the registration commissioners negatived any such construction.

No harm was done the appellant by submitting the case to the jury. Under the evidence in the record the plaintiff was entitled to binding instructions in his favor.

The judgment is affirmed.